**BROCK & GONZALES, LLP**
6701 CENTER DRIVE WEST, SUITE 610
LOS ANGELES, CA 90045
Tel: (310) 294-9595
Fax: (310) 961-3673
D. AARON BROCK, STATE BAR NO. 241919
ab@brockgonzales.com

**Attorneys for Plaintiff**
Lindsay Okonowsky

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LINDSAY OKONOWSKY,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM P. BARR, ATTORNEY GENERAL UNITED STATES DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF PRISONS,<br><br>Defendant. | **Case No.:**<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR:**<br><br>1. **SEXUAL DISCRIMINATION/ HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**<br><br>**DEMAND FOR JURY TRIAL** |

1
**COMPLAINT**

1  Plaintiff, LINDSAY OKONOWSKY, hereby brings her employment
2  complaint, demanding a trial by jury, against the above-named Defendant and
3  states and alleges as follows:

## PARTIES

4  1. At all times mentioned herein, Plaintiff, LINDSAY OKONOWSKY,
5  was a female individual.
6  2. At all times mentioned herein, Defendant WILLIAM P. BARR
7  ATTORNEY GENERAL UNITED STATES DEPARTMENT OF JUSTICE,
8  FEDERAL BUREAU OF PRISONS was the head of the DOJ, a Federal Executive
9  Department of the United States Government that was and still is Plaintiff's
10 employer.

## JURISDICTION & VENUE

11  3. Jurisdiction is conferred in this Court by Title VII of the Civil Rights
12  Act, U.S.C. § 2000(e), et seq.
13  4. All complained of conduct occurred in Santa Barbara County,
14  California.

## ALLEGATIONS

15  5. Defendant has a social media policy that states in part, "Department employees should not make comments that can be perceived as showing prejudice based on race, gender, sexual orientation or any other protected basis." The policy also includes, "The line between public and private, personal and professional, is often blurred, especially when an employee using social media includes his or her Department affiliation or title, or comments on matter related to his or her work, or the work of the Department." Despite this policy, Defendant allowed a "supervisor" to run an Instagram page that he used to make comments clearly referring to Plaintiff as a "*staff member*" that's a "*giant cunt*" that "*loves inmates*" and "*tells on staff*." Such an Instagram post, which is only one of many that is sexist and derogatory towards women, was viewed by Plaintiff's co-workers,

supervisors and human resources, who instead of taking corrective action, "liked" the posts, which created a hostile work environment for Plaintiff, who repeatedly requested Defendant take preventative action.

6. Plaintiff began working as a GS-12 Staff Psychologist at FCI Lompoc, a Federal Correctional Institution under the DOJ, on September 17, 2018.

7. Plaintiff became aware of the Instagram page "8_and_hitthe_gate" on February 16, 2020. Plaintiff viewed the page because she noticed that many of her coworkers at FCI Lompoc were already following the page and liking the posts.

8. Steven Hellman, a Lieutenant at FCI Lompoc, created and ran the Instagram page "8_and_hitthe_gate."

9. Hellman's page was followed by over a hundred employees at FCI Lompoc, including its Human Resources Manager.

10. There were many incredibly sexist and vulgar posts on the page that were overtly demeaning and derogatory towards women.

11. FCI Lompoc employees frequently liked and commented on these offensive posts.

12. The day after she found the Instagram page, on February 17, 2020, Plaintiff reported the page to her supervisors, who suggested Plaintiff speak with Acting Warden James Engelman.

13. The next day, Hellman posted a meme of Nancy Pelosi ripping up President Trump's State of the Union address with captions that said, "*When you get butt hurt by memes*" and "*Tomorrow's forecast: hot enough to melt a snowflake*" and the hashtag, *#youcantakeadickbutnotajoke*.

14. Plaintiff was upset as the meme targeted her because she had just complained about the page.

15. Plaintiff then spoke with Warden Engelman on February 18, 2020, who indicated he would submit a referral to the Office of Internal Affairs.

16. Internal Affairs met with Plaintiff on February 26, 2020. At that time, the Internal Affairs officer printed some of the memes and then said things to Plaintiff like, "*I don't see the problem,*" and insisted that Plaintiff explain what was sexist and harassing about each post. Plaintiff was simply told that Hellman was just "*acting like a kid,*" and that she should just stop looking at the page.

17. Immediately thereafter, on March 7, 2020, Hillman posted a meme page of a woman who represented Plaintiff's likeness and included comments that were derogatory towards women and Plaintiff's profession.

18. That same day, Plaintiff texted her supervisor that the social media posts targeting her had continued and she continued to complain throughout March 2020. Plaintiff also wrote a memo and submitted it to Associate Warden on March 11, 2020, detailing the harassing memes that continued to be posted on the page.

19. Plaintiff's complaints were repeatedly dismissed.

20. Another meme targeting Plaintiff was posted on March 27, 2020, after Hellman learned of her complaints from the threat assessment team and clearly referred to Plaintiff as a "*giant cunt.*" Several FCO Lompoc staff members "liked" the post. Plaintiff immediately complained to Warden Engelman:



21. On April 13, 2020, a Threat Assessment Team was finally convened to review Plaintiff's "concerns about [a] hostile work environment and social media use in violation of policy."

22. The Threat Assessment Team determined that Hellman unconvincingly denied that the memes were directed at Plaintiff.

23. The Threat Assessment Team made several recommendations to the Agency including referring Hellman to the Office of Internal Affairs for possible policy violations; issuing a cease-and-desist letter from posting on social media any memes/information which violates Agency policy; and a referral to the Employee Assistance Program.

24. There is nothing indicating that the Agency ever actually issued Hellman a cease-and-desist letter, just that it was recommended by the Threat Assessment Team on April 16, 2020.

25. Following the Threat Assessment Report on April 16, 2020, almost two months after Plaintiff's initial complaints, Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services.

26. Plaintiff initially complained about Instagram page on February 18, 2020; however, the page was not taken down until after May 12, 2020.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27. Plaintiff timely filed charges against Defendant with the Equal Employment Opportunity Commission. Plaintiff received a "Right-to-Sue" notice on August 5, 2021, giving Plaintiff 90 days from that date to file suit. Therefore, Plaintiff has complied with, and exhausted, all administrative remedies, and now seeks a trial in this district court *de novo*.

///
///
///
///

# FIRST CAUSE OF ACTION
## SEXUAL DISCRIMINATION/HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
**(Against ALL Defendants)**

28. Plaintiff incorporates by reference paragraphs 1 through 27, inclusive, of this Complaint as if fully set forth at this place.

29. All times herein mentioned, 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, was in full force and effect and was binding on Defendants.

30. Title VII requires Defendant to refrain from discriminating against any employee on the basis of sex/gender. Sexual harassment is actionable as "discrimination" on the basis of sex in violation of Title VII when the conduct is so severe and pervasive as to alter the conditions of the victim's employment and create an abusive work environment.

31. Defendant engaged in unlawful employment practices in violation of Title VII by discriminating/harassing against Plaintiff on account of her sex/gender.

32. As a proximate result of the wrongful acts of Defendant, Plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms. Plaintiff is informed and believes, and thereupon alleges, that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

33. As a proximate result of the wrongful acts of Defendant, Plaintiff has been forced to hire attorneys to prosecute her claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under 42 U.S.C. § 2000e-5(k).

**WHEREFORE, Plaintiff prays for judgment as follows:**

1. For general damages, according to proof;
2. For special damages, according to proof;
3. For attorney fees and costs of suit;
4. For prejudgment and post-judgment interest, according to law; and
5. For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: September 22, 2021            BROCK & GONZALES, LLP

                                     By: _____
                                     D. AARON BROCK
                                     Attorneys for Plaintiff