1  E. MARTIN ESTRADA
   United States Attorney
2  DAVID M. HARRIS
   Assistant United States Attorney
3  Chief, Civil Division
   JOANNE S. OSINOFF
4  Assistant United States Attorney
   Chief, General Civil Section
5  ZAKARIYA K. VARSHOVI[1]
   Assistant United States Attorney
6         Federal Building, Suite 7516
          300 North Los Angeles Street
7         Los Angeles, California 90012
          Telephone: (213) 894-3994
8         Facsimile: (213) 894-7819
          E-mail: zakariya.varshovi@usdoj.gov
9  *Attorneys for Defendant Merrick Garland*

10                **UNITED STATES DISTRICT COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12                      **WESTERN DIVISION**

13  LINDSAY OKONOWSKY,              No. CV 21-07581-VAP-AS

14        *Plaintiff,*              **DEFENDANT'S MOTION FOR**
                                    **SUMMARY JUDGMENT**
15        v.
                                    [*Statement of Undisputed Facts and*
16  MERRICK GARLAND,                *Conclusions of Law; Declaration of*
                                    *Zakariya K. Varshovi; Declaration of James*
17        *Defendant.*              *Engleman; Declaration of Carl Clegg; and*
                                    *Proposed Judgment filed concurrently*
18                                  *herewith*]

19
                                    Date:        April 4, 2023
20                                  Time:        2:00 PM
                                    Ctrm:        6A
21
22                                  Hon. Virginia A Phillips

23

24

25

26

27  ───────────────────
         [1] Admitted to practice under Local Rule 83-2.1.4.1. *See* Order, In Re Application
28  of Zakariya K. Varshovi for Admission Pursuant to Local Rule 83-2.1.4.1, C.D. Cal. No.
    2:22-cm-14-PSG (Jan. 30, 2023).

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND............................................................................. 2

    A.    Plaintiff's Complaints and Defendant's Investigation. .................................. 2

    B.    Plaintiff's Post-Complaint Career at BOP. .................................................... 5

III.  ARGUMENT....................................................................................................... 6

    A.    PLAINTIFF   DOES   NOT—*AND   CANNOT*—ESTABLISH   A
    HOSTILE WORK ENVIRONMENT CLAIM............................................... 6

        1.    Plaintiff Complains About Conduct Outside the Workplace. ............ 6

        2.    The Alleged Conduct Was Neither Severe Nor Pervasive. ............... 7

    B.    EVEN    ASSUMING    PLAINTIFF    HAD    PRESENTED
    ACTIONABLE HARASSMENT, DEFENDANT PROMPTLY AND
    REASONABLY REMEDIATED IT. ........................................................... 10

IV.   CONCLUSION.................................................................................................. 13

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Alioto v. Assoc. Exch. Inc.*,
   482 F. App'x 222, 223 (9th Cir. 2012)..............................................................9

*Alvarez v. Joy*, No. 2:20-cv-10132,
   2022 U.S. Dist. LEXIS 236221, at *38-39 (C.D. Cal. Dec. 20, 2022) ............6, 7

*Armstrong v. City of Dallas*,
   997 F.2d 62, 67 n. 19 (5th Cir. 1993) ...............................................................8

*Bottenberg v. Carson Tahoe Hosp.*,
   No. 5-cv-684, 2007 WL 9771085, at *4 (D. Nev. May 17, 2007)...................7

*Candelore v. Clark Cnty. Sanitation Dist.*,
   975 F.2d 588, 590 (9th Cir. 1992)..................................................................6, 7

*Domingo v. Brennan*,
   639 F. App'x 418, 420 (9th Cir. 2016) ...............................................................7

*EEOC v. Prospect Airport Servs., Inc.*,
   621 F.3d 991, 998 (9th Cir. 2010) ......................................................................9

*Fuller v. Idaho Dep't of Corr.*,
   865 F.3d 1154, 1161 (9th Cir. 2017) ..................................................................6

*Fuller v. Idaho Dep't of Corr.*,
   694 F. App'x 590, 591 (9th Cir. 2017)............................................................6, 7

*Isiramen v. Yuma Reg'l Med. Ctr.*,
   838 F. App'x 298, 299 (9th Cir. 2021) ...............................................................9

*Jenott v. St. Alphonsus Reg'l Med. Ctr.*,
   No. 8-cv-322, 2009 WL 5200524, at *7 (D. Idaho Dec. 23, 2009) ................7

*Kortan v. Cal. Youth Auth.*,
   217 F.3d 1104, 1111 (9th Cir. 2000) ................................................................10

*Lappin v. Laidlaw Transit*,
   179 F. Supp. 2d 1111, 1122 (N.D. Cal. 2001)..................................................11

*Manatt v. Bank of America, NA*,
   339 F.3d 792 (9th Cir. 2003) ........................................................................9, 10

*Nagar v. Found. Health Sys.*,
   57 F. App'x 304, 306 (9th Cir. 2003).............................................................6, 10

*Nixon v. Franciscan Health Sys.*,
   No. 11-cv-5076, 2012 WL 1068070, at *4 (W.D. Wash. Mar. 29, 2012) ........11

*Patton v. Indianapolis Pub. Sch. Bd.*,
   276 F.3d 334, 339 (7th Cir. 2002) ......................................................................7

**Cases**                                                                    **Page(s)**

*Sanchez v. City of Santa Ana*,
    936 F.2d 1027, 1031, 1036-37 (9th Cir. 1990)................................................10

*Swenson v. Potter*,
    271 F.3d 1184, 1198 (9th Cir. 2001) ................................... 2, 10, 11, 12

*Taylor v. Small*,
    350 F.3d 1286, 1292 (D.C. Cir. 2003)..............................................8

*Yaa Asante-Addae v. Sodexo, Inc.*,
    No. 3:13-cv-489, 2015 WL 1471927, at *13 (D. Conn. Mar. 31, 2015) ..........8, 9

*Vasquez v. County of Los Angeles*,
    307 F.3d 884, 893 (9th Cir. 2002) ....................................................10

*Watson v. Las Vegas Valley Water Dist.*,
    268 F. App'x 624, 626 (9th Cir. 2008)........................................10, 11

## **DEFENDANT'S NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on April 4, 2023 at 2:00 PM, Defendant Merrick Garland hereby moves this Court for an order entering judgment against all of Plaintiff's claims and dismissing her action with prejudice under Rule 56 of the Federal Rules of Civil Procedure.  This motion will be made before the Honorable Virginia A. Phillips, U.S. District Judge, Courtroom 6A, in the First Street Courthouse, located at 350 W. 1st Street, Los Angeles, California 90012.

Defendant brings the Motion pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that there is no triable issue of fact as to Plaintiff's claims, as detailed in the accompanying Memorandum of Points and Authorities.  This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the attached Statement of Undisputed Facts and Contentions of Law ("SUF"), the Declaration of James Engelman ("Engleman Decl."), the Declaration of Zakariya K. Varshovi ("Varshovi Decl.") and the Declaration of Carl Clegg ("Clegg Decl."), the pleadings and papers on file herein, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

This motion is made following conference of counsel under Local Rule 7-3 which was held on February 22, 2023.

Dated: March 6, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

/s/ *Zakariya K. Varshovi*
ZAKARIYA K. VARSHOVI
Assistant United States Attorney

*Attorneys for Defendant Merrick Garland*

iv

**INTRODUCTION**

While ostensibly claiming to present a hostile work environment claim, Plaintiff's action seeks to dramatically expand Title VII's reach well beyond the workplace. Plaintiff's claim rests entirely on personal social media content that occurred wholly outside the workplace and remained exclusively online.  Indeed, Plaintiff openly admits such content was *never* sent to her, *never* displayed in the workplace, and *never* shown to her in the workplace.  Instead, she went online to view another employee's personal Instagram page on a daily basis. The Ninth Circuit routinely finds summary judgment proper where, as here, a hostile work environment claim rests solely on conduct outside of the workplace.

But even considering the limited content Plaintiff claims is directed at her—despite such memes never naming, picturing, referencing, nor otherwise identifying her—the overwhelming majority of such memes are not based on protected characteristics, as they must be to implicate Title VII.  The memes, instead, deride correctional psychologists or display women Plaintiff claims are overweight and thus resemble herself.  Even assuming such memes were actually directed at Plaintiff, courts widely agree comments regarding an employee's weight find no protection under Title VII.   Nor are correctional psychologists a protected class.   Ultimately, only three memes Plaintiff speculatively claims are directed at her could be characterized as implicating protected characteristics, one of which is undated, while the other two were posted over a month apart.  The Ninth Circuit repeatedly finds such isolated incidents insufficient to show a hostile work environment.

And even if Plaintiff could present an actionable claim (she does not), Defendant promptly investigated and remediated the alleged harassment.  The same day Plaintiff complained to Defendant of the Instagram page (the "Page"), it began investigating.  Also that same day, Plaintiff's supervisor, with her consent, re-assigned her to a different part of the Federal Correctional Complex ("FCC") Lompoc to avoid any contact with suspected authors of the Instagram content.  Defendant made a referral to its Office of Internal

1

Affairs, convened a Threat Assessment Team, interviewed Plaintiff and the alleged creator of the Page, and issued him a Cease-and-Desist Order.  Thereafter, Plaintiff did not assert a single meme was directed at her—the alleged harassment stopped.  And the Page's creator deleted the entire Instagram Page.  Where, as here, "the employer takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation."  *Swenson v. Potter*, 271 F.3d 1184, 1198 (9th Cir. 2001).

Accordingly, the Court should enter summary judgment in Defendant's favor.

## FACTUAL BACKGROUND

Plaintiff, a former staff psychologist at FCC Lompoc, alleges she was subjected to a hostile work environment due to memes posted on an employee's personal Instagram Page.  Compl. ¶¶ 12, 15.  The Page was deleted on May 12, 2020.  *Id.* ¶ 26.  Plaintiff's action does not allege that she was subjected to a hostile work environment before February 18, 2020 nor after May 12, 2020.  *Id.*  For each meme on the Page, including those Plaintiff asserted were targeted at her, she admitted that none were *ever* sent to her, *ever* displayed in the workplace, *ever* shown to her in the workplace, nor *ever* discussed with her without her consent.  SUF ¶¶ 6, 14, 21, 23, 25, 26, 33.  Instead, Plaintiff went to the Page—*on a daily basis*—to view each offending meme and even created a fake account to continue viewing them when blocked from the Page by its creator.  SUF ¶ 15.

### A.   Plaintiff's Complaints and Defendant's Investigation.

On February 18, 2020, Plaintiff complained to Acting Warden ("AW") James Engelman regarding content on the Page.  SUF ¶ 1.  Plaintiff did not know nor identify the author of the Page.  SUF ¶ 2.  Even so, that same day, AW Engleman instructed Special Investigative Agent ("SIA") Victor Gonzales to investigate Plaintiff's complaints.  SUF ¶ 3.  Also, that day, Plaintiff's immediate supervisor, Chief Psychologist Dr. Carl Clegg re-assigned her, with her consent, from FCC Lompoc's Medium Facility to the Low Facility because she believed that staff working in the Special Housing Unit ("SHU") at the Medium Facility likely made the memes on the Page.  SUF ¶ 4.

Later that day, Plaintiff again visited the Page, viewing a meme containing a picture

2

of former Speaker Nancy Pelosi tearing the State of the Union of Address in half, captioned with "When you get butthurt by memes," "Tomorrow's forecast?  Hot enough to melt a snowflake #youcantakeadickbutnotajoke."  SUF ¶ 5.  On February 19, 2020, at 7:07 AM, Plaintiff e-mailed the meme to AW Engleman, writing in relevant part, "I think the most recent post I sent you may warrant another conversation.  If you have time today, please give me a call . . .."  SUF ¶ 7.  At 7:50 AM, AW Engelman forward Plaintiff's e-mail to SIA Gonzales.  SUF ¶ 8.  That morning, SIA Gonzales called Plaintiff to schedule a meeting to discuss her complaints.  SUF ¶ 9.

On February 26, 2020, SIA Gonzalez met with Plaintiff to discuss her complaints regarding the Page.  SUF ¶ 10.

On March 7, 2020, at 12:46 PM, Plaintiff e-mailed AW Engleman, attaching a meme from the Page, writing in relevant part "This is completely inappropriate and is setting the tone for a strikingly hostile work environment."  SUF ¶ 11.  The meme, which Plaintiff viewed by visiting the Instagram page, captioned a picture of a woman holding a milkshake, with "Feeling cute, might put on a watch later," and "If psychology had to cover the morning watch shifts all weekend, nobody'd [*sic*] ever go on watch #changemymind."  SUF ¶ 12.  Even after Plaintiff was blocked from viewing the Page that day by its creator, she nevertheless created a fake Instagram account to continue viewing it on a daily basis as she had since February 18, 2020.  SUF ¶ 15.

On Monday, March 9, 2020, at 7:52 AM, AW Engleman forwarded Plaintiff's e-mail to SIA Gonzales, and later that day, he directed SIA Gonzales to refer Plaintiff's complaints regarding the Page to the Bureau of Prisons' Office of Internal Affairs in addition to the ongoing FCC Lompoc Investigation.  SUF ¶¶ 16-17.

On March 11, 2020, Plaintiff sent AW Gutierrez a 48-page memo regarding the Page, including 20 pages of memes, which the next day, at 7:47 AM, AW Engelman forwarded to SIA Gonzales.  SUF ¶¶ 18, 27.  Also on March 11, 2020, AW Engelman directed SIA Gonzales to provide Ms. Okonowsky's memo to OIA in connection with the original referral submitted on March 9, 2020.  SUF ¶ 28.  Also that day, as a result of

3

Plaintiff's allegation in her memo as to the identity of the Page's creator, that individual was assigned to a different facility at FCC Lompoc while her complaints were investigated.  SUF ¶ 29.

On March 13, 2020, Dr. Clegg provided Plaintiff with information regarding the Employment Assistance Program ("EAP"), which provides free, voluntary counseling to employees.  SUF ¶ 30.

On March 27, 2020, at 9:32 PM, Plaintiff e-mailed AW Engleman, attaching a meme she viewed on the Page, asserting "It is obvious these posts are targeted toward me. Is anything going to be done to curb this behavior as the investigation takes place?  I shouldn't have to work in an environment with people who refer to me as a [c***] on a public forum."  SUF ¶ 31.  The next day, at 11:50 AM, AW Engelman forwarded Plaintiff's e-mail to SIA Gonzales.  SUF ¶ 31.  The meme had the caption "The one staff member that's a giant [c***], loves inmates, and relentlessly tells on staff," with a colon before a picture of "United States Penitentiary Big Sandy, Kentucky," in which "Big Sandy" is underlined in red, with a second caption beneath stating "You know, on account of their vaganga [*sic*]."  SUF ¶ 32.

In early April 2020, Barbara Von Blanckensee was assigned as Warden at FCC Lompoc.  SUF ¶ 34.  Shortly thereafter, AW Engleman apprised her of Plaintiff's complaints regarding the Page.  SUF ¶ 35.

On April 13, 2020, Warden Von Blanckensee convened a six-member Threat Assessment Team to review Plaintiff's concerns regarding the Page.  SUF ¶ 36.  That same day, the Team reviewed Plaintiff's March 11, 2020 memo and interviewed her in-person. SUF ¶ 37.  She stated that she had "no personal or direct knowledge" as to who ran the Page and that the offending conduct occurred exclusively online.  SUF ¶ 38.  On April 15, 2020, the Team interviewed the Page's creator in-person upon his return from previously scheduled leave.  SUF ¶ 39.  The Page's creator, a correctional officer, admitted that he was the Page's owner and sole contributor, and stated that the "account was just a joke, 'dark prison humor,' and a way for him to blow off steam."  SUF ¶ 40.  The Page's creator

denied that any of his memes were directed at Plaintiff and said he never intended to offend her nor anyone else.  SUF ¶ 41.

On April 16, 2020, the Team issued a memo to Warden Von Blanckensee, concluding that Plaintiff "did not suffer physical harm or damage to her property, nor was she exposed to potential danger or harm as a result of" the actions of the Page's creator. SUF ¶ 42.  But because the Team found that the actions of the Page's creator could constitute bullying, specifically "posting of several memes that reasonably appear to have been directed solely at her," the Team recommended that the Page's creator be issued a Cease-and-Desist Order and that he and Plaintiff should continue to remain in separate complexes.  SUF ¶ 43.

That same day, following the Threat Assessment Team's recommendations, a Cease-and-Desist Order was issued on April 16, 2020 to the Page's creator, ordering him to cease and desist posting content on social media in violation of BOP policy, including content that could reasonably be deemed harassing or bullying of another employee.  SUF ¶ 44.  Also, that same day, following the Threat Assessment Team's recommendations, the Page's creator was provided information about EAP, a program which among other things offers free, voluntary confidential counseling to BOP employees to help them address concerns that may negatively impact job performance and overall well-being. SUF ¶ 45.

Thereafter, Plaintiff identified no further memes on the Page based on protected characteristics.  SUF ¶ 46.  Even so, Plaintiff subsequently Plaintiff complained of new memes she found offensive, none of which she alleged were directed at her.  SUF ¶ 46. On May 12, 2020, the Page's creator deleted the Page entirely.  SUF ¶ 47.

### B.   Plaintiff's Post-Complaint Career at BOP.

Subsequent to the deletion of the Page, Plaintiff made no further complaints and remained a BOP employee for over two years.  SUF ¶ 48.  Plaintiff continued to receive retention bonuses.  SUF ¶ 49.  On January 24, 2021, she was promoted to a new position at Federal Correctional Institute Seagoville, Texas, which she received along with a pay

raise.  SUF ¶ 50.  On July 6, 2022, Plaintiff resigned from the Bureau of Prisons.  SUF ¶ 51.

## ARGUMENT

### A.    PLAINTIFF DOES NOT—*AND CANNOT*—ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM

To establish a hostile work environment claim, Plaintiff must demonstrate that (1) she was subjected to verbal or physical conduct of a harassing nature based on a protected characteristic, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.  *Nagar v. Found. Health Sys.*, 57 F. App'x 304, 306 (9th Cir. 2003).  Such "conduct must be extreme in order to amount to a change in the terms and conditions of employment."  *Id.*

### 1.    **Plaintiff Complains About Conduct Outside the Workplace.**

It is undisputed that the conduct Plaintiff complained of occurred outside of the workplace.  The Ninth Circuit and its courts have repeatedly held that conduct outside the workplace standing alone cannot establish a hostile *work* environment.  *See, e.g.*, *Fuller v. Idaho Dep't of Corr.*, 694 F. App'x 590, 591 (9th Cir. 2017) ("Fuller argues that her rapes created a hostile work environment.  But, the rapes occurred outside the workplace"); *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (holding that "conduct away from the workplace or outside business hours" was not actionable); *Alvarez v. Joy*, No. 2:20-cv-10132-FWS, 2022 U.S. Dist. LEXIS 236221, at *38-39 (C.D. Cal. Dec. 20, 2022) ("Conduct occurring outside the workplace" is "insufficient 'to alter the conditions of the victim's employment and create an abusive work environment'") (quoting *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017)).   Yet Plaintiff complains about just that.  In fact, Plaintiff has admitted with respect to every single meme she has complained of that:

- No such memes were *ever* sent to her.  SUF ¶¶ 6, 14, 21, 23, 25, 26, 33.
- No such memes were *ever* displayed in the workplace.  *Id.*

6

- No such memes were *ever* shown to her in the workplace.  *Id.*

- No such memes were *ever* discussed with her without her consent.  *Id.*

Instead, Plaintiff viewed all such memes when she visited the Instagram page—on a daily basis—on her own time.  SUF ¶ 15.  Courts within the Ninth Circuit routinely find summary judgment proper where, as here, a hostile work environment claim rests on conduct outside of the workplace.  *See, e.g.*, *Fuller*, 694 F. App'x at 591 (affirming summary judgment "[b]ecause [plaintiff] does not claim that Cruz sexually harassed her in the workplace or a related environment, or that he returned to work after the rapes"); *Candelore*, 975 F.2d at 590 (affirming summary judgment because "[m]uch of" the plaintiff's evidence "involved conduct away from the workplace or outside business hours"); *Alvarez*, 2022 U.S. Dist. LEXIS 236221, at *38 (granting summary judgment where the "facts Plaintiff relies on as evidence of sex discrimination indicate that the harassment occurred outside the workplace"); *Jenott v. St. Alphonsus Reg'l Med. Ctr.*, No. 8-cv-322, 2009 WL 5200524, at *7 (D. Idaho Dec. 23, 2009) (granting summary judgment where offensive incidents "occurred off-site, after work hours and without [her] in attendance," and "during a birthday party and not in the workplace"); *Bottenberg v. Carson Tahoe Hosp.*, No. 5-cv-684, 2007 WL 9771085, at *4 (D. Nev. May 17, 2007) (granting summary judgment where "most of the incidents of harassment did not occur at work").

Accordingly, summary judgment is proper on this basis alone.

### 2.     The Alleged Conduct Was Neither Severe Nor Pervasive.

Among the limited memes Plaintiff identifies as purportedly directed at her, the overwhelming majority do not reference protected characteristics, as they must be to implicate Title VII.  *See, e.g.*, *Domingo v. Brennan*, 639 F. App'x 418, 420 (9th Cir. 2016) ("a plaintiff cannot establish a prima facie case where he presents no evidence that comments were based on protected characteristics") (citation omitted); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) ("As long as the hostility was not based on a protected characteristic, Title VII is not implicated").

Instead, such memes malign correctional psychologists and correctional psychology departments.  *See* SUF ¶ 12 (captioning meme, depicting smiling woman holding a milkshake, with "Feeling cute, might put on a watch later," with "If psychology had to cover the morning watch shifts all weekend, nobody'd [sic] ever go on watch #changemymind"); SUF ¶ 19 (captioning meme picturing "stay in your lane" traffic sign, with "When Psychology tries to tell you where you can n [sic] can't cell somebody"); *id.* (captioning meme picturing cartoon character appearing sad, with "when psychology doesn't get their way"); *id.* (captioning meme picturing woman wearing sweater stating "the struggle is real," with "When you piss off the SHU crew, and now you have to pull your own inmates" and "Don't bite the hand that feeds you").

Plaintiff admitted as much.  *See* SUF ¶ 13 ("This post . . . diminishes the role of Psychology Services . . . and challenges the competency of the Psychology Services department"); SUF ¶ 20 ("This post clearly highlights a lack of respect for psychology services."); SUF ¶ 22 ("During a SHU training earlier this year, SHU staff were argumentative regarding their job role of removing inmates from their cells for appointments with Psychology Services. . . . the staff member 'got his way' and me, as 'Psychology,' did not"); SUF ¶ 24 ("I believe these posts targeted me as the former SHU psychologist").  But Plaintiff's occupation as correctional psychologist is not a protected characteristic.

Additionally, Plaintiff asserts that some of the memes above, in addition to mocking correctional psychologists, depict women whom Plaintiff claims are overweight, thus resembling her.  *See* SUF ¶ 13 ("This post is derogatory toward women, is critical of women's (specifically my) bodies"); SUF ¶ 24 ("I believe the posts also reflect [the Page's creator's] pattern of critiquing my physical appearance.").  But courts widely agree that Title VII does not proscribe comments regarding an employee's weight.  *See, e.g.*, *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003) ("Title VII does not proscribe discrimination based upon an employee's excessive weight"); *Armstrong v. City of Dallas*, 997 F.2d 62, 67 n. 19 (5th Cir. 1993) ("obesity . . . is [not] protected by Title VII"); *Yaa*

*Asante-Addae v. Sodexo, Inc.*, No. 3:13-cv-489, 2015 WL 1471927, at *13 (D. Conn. Mar. 31, 2015) ("remarks regarding a person's weight are not actionable under Title VII").

Only three memes Plaintiff identifies could be characterized as based on protected characteristics. *See* SUF ¶ 5 (2/18/2020 Speaker Nancy Pelosi tearing the State of the Union of Address in half, captioned with "When you get butthurt by memes," "Tomorrow's forecast?  Hot enough to melt a snowflake #youcantakeadickbutnotajoke"); SUF ¶ 32 (3/27/2020 Instagram post, containing caption "The one staff member that's a giant [c***], loves inmates, and relentlessly tells on staff," with a colon before a picture of "United States Penitentiary Big Sandy, Kentucky," in which "Big Sandy" is underlined in red, with a second caption beneath stating "You know, on account of their vaganga [*sic*]"); SUF ¶ 19 (undated Instagram picture of a man's face, preceded by a caption stating "When a female co-worker invites guys only for an 'End of Quarter' Party" and followed by a caption, stating "I'm here for the gang bang").  Undoubtedly, such memes are offensive.  But, again, such memes never name, picture, reference, or otherwise identify Plaintiff.  And all such memes—as Plaintiff admits—were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent.  SUF ¶¶ 6, 14, 21, 23, 25, 26, 33.

At bottom, Plaintiff presents three offensive memes posted over at least a month a part.  But such isolated incidents fail to establish the existence of a hostile work.  *See, e.g.*, *Isiramen v. Yuma Reg'l Med. Ctr.*, 838 F. App'x 298, 299 (9th Cir. 2021) ("isolated incidents are insufficient to show severe or pervasive harassment"); *Alioto v. Assoc. Exch. Inc.*, 482 F. App'x 222, 223 (9th Cir. 2012) (conduct that is "episodic at best" is "insufficient to establish a prima facie case" for hostile work environment); *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010) ("A violation is not established merely by evidence showing sporadic use of abusive language, gender-related jokes, and occasional teasing") (cleaned up).

The Ninth Circuit routinely finds similar conduct, while patently offensive, insufficient to show a hostile work environment.  *See, e.g.*, *Manatt v. Bank of America,*

1    *NA*, 339 F.3d 792, 795-96 (9th Cir. 2003) (finding no hostile work environment where
2    plaintiff observed her coworkers laughing and saying "China Man," pulled back "their
3    eyes back with their fingers in an attempt to imitate or mock the appearance of Asians,"
4    ridiculed her for mispronouncing the word "Lima" and referred to her as "China woman");
5    *Nagar*, 57 F. App'x at 306 ("instances of national origin harassment taken together show
6    that Nagar was subjected only to offhand comments and isolated incidents of offensive
7    conduct" were "insufficiently severe or pervasive to alter the terms and conditions of her
8    employment"); *Vasquez v. County of Los Angeles*, 307 F.3d 884, 893 (9th Cir. 2002)
9    (finding no hostile work environment where plaintiff was told that he had "a typical
10   Hispanic macho attitude," that he should work in the field because "Hispanics do good in
11   the field" and was yelled at in front of others); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104,
12   1110-11 (9th Cir. 2000) (finding no hostile work environment where the supervisor
13   referred to females as "castrating bitches," "Madonnas," "histrionics," or "Regina" in front
14   of plaintiff on several occasions and directly called plaintiff "Medea"); *Sanchez v. City of
15   Santa Ana*, 936 F.2d 1027, 1031, 1036-37 (9th Cir. 1990) (finding no hostile work
16   environment where employer posted a racially offensive cartoon, made racially offensive
17   slurs, targeted Hispanics when enforcing rules, provided unsafe vehicles to Hispanics, and
18   did not provide adequate police backup to Hispanics officers).

19        Accordingly, Plaintiff cannot show, as she must, that she was subject to "extreme
20   conduct" severe or pervasive enough to alter the conditions of her employment. *Nagar*,
21   57 F. App'x at 306. Summary judgment is proper on this basis, too.

22   **B.   EVEN ASSUMING PLAINTIFF HAD PRESENTED ACTIONABLE**
23   **HARASSMENT, DEFENDANT PROMPTLY AND REASONABLY**
24   **REMEDIATED IT.**

25        Even assuming Plaintiff had presented an actionable claim, she must prove that
26   Defendant acted negligently, namely "that the employer knew or should have known of
27   the harassment but did not take adequate steps to address it." *Swenson*, 271 F.3d at 1192.
28   But because Defendant undertook "remedial measures reasonably calculated to end the

harassment," Plaintiff cannot do so.  *Watson v. Las Vegas Valley Water Dist.*, 268 F. App'x 624, 626 (9th Cir. 2008) (cleaned up).

The Ninth Circuit and its courts have repeatedly found employers not liable where, as here, it promptly investigates and takes remedial measures reasonably calculated to end the alleged harassment.  *See, e.g.*, *Watson*, 268 F. App'x at 626 (employer not liable where its "response to the December 4th incident was prompt and effective: Nguyen was interviewed, admitted his grossly inappropriate conduct and received an unpaid, one-day suspension; neither he nor any other employee has engaged in similar conduct since"); *Swenson*, 271 F.3d at 1197 ("Even assuming that the investigation was less than perfect, the Postal Service nevertheless took prompt action to remedy the situation.  The harassment stopped."); *Nixon v. Franciscan Health Sys.*, No. 11-cv-5076, 2012 WL 1068070, at *4 (W.D. Wash. Mar. 29, 2012) (employer not liable because it "promptly initiat[ed] an investigation, advis[ed] Mian not to retaliate or engage in harassing behavior, offer[ed] Nixon additional services to ensure her safety, and encourag[ed] her to take additional steps to ensure her own safety"); *Lappin v. Laidlaw Transit*, 179 F. Supp. 2d 1111, 1122 (N.D. Cal. 2001) (employer not liable because it "initiated an investigation that involved interviews of all witnesses and a meeting of the parties involved" and warned both parties").  Indeed, Defendant promptly investigated Plaintiff's Complaints and its remedial measures addressed the alleged harassment.

On February 18, 2020, Plaintiff complained to Defendant regarding the Page.  SUF ¶ 1.  That same day, Defendant began investigating her complaints.  SUF ¶ 3; *Swenson*, 271 F.3d at 1193 ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified.").  Also that same day, Dr. Clegg re-assigned Plaintiff, with her consent, to FCC Lompoc's Low facility to limit any potential contact SHU staff she suspected authored memes on the Page.  SUF ¶ 4.  And upon her allegation as to the identity of the Page's creator, that individual was assigned to a different facility at FCC Lompoc while her complaints were investigated.  SUF ¶ 29.  *Swenson*, 271 F.3d at 1192

11

(finding no liability where employer, among other things, "separated the two employees pending the outcome of an investigation by moving Swenson to a different location within the same facility"). On February 26, 2020, Defendant met with her to discuss and further investigate her complaints. SUF ¶ 10. Less than two weeks later, Defendant referred Plaintiff's complaint to its Office of Internal Affairs. SUF ¶ 17. In early April 2020, incoming Warden Blanckensee was apprised of Plaintiff's complaints regarding the Page. SUF ¶ 35. A Threat Assessment Team was convened on April 13, 2020, which reviewed Plaintiff's March 11, 2020 memo and interviewed her in-person. SUF ¶¶ 36-37. Two days, later the Team interviewed the Page's creator in-person. SUF ¶ 39. The next day, the Page's creator was issued the Cease-and-Desist Order. SUF ¶ 44. Thereafter, Plaintiff did not assert a single meme was directed at her—the alleged harassment stopped. SUF ¶ 46.

Nevertheless, Plaintiff complained about subsequent memes posted after the Threat Assessment meeting which she perceived as offensive—that same day, the Page's creator deleted the Page entirely. SUF ¶¶ 46-47. Subsequent to the deletion of the Page, Plaintiff made no further complaints and remained a BOP employee for over two years until her voluntary resignation. SUF ¶ 51. And while Plaintiff will critique Defendant's investigation where, as here, "the employer takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation." *Swenson*, 271 F.3d at 1198. Defendant diligently investigated and addressed the harassment as COVID-19 swept through FCC Lompoc, infecting *over a third* of its inmate population.[2]

Accordingly, even if Plaintiff could demonstrate that a hostile work environment existed (she cannot), Defendant is nevertheless not liable and summary judgment is proper.

---

[2] By May 11, 2020, COVID-198 had infected 25 staff and 912 inmates (over a third of FCC Lompoc's inmate population). Remote Inspection of FCC Lompoc, DOJ, OIG (July 14, 2020), *available at* https://oig.justice.gov/sites/default/files/reports/20-086.pdf (last accessed March 6, 2023).

1

## CONCLUSION

2        Ultimately, Plaintiff's action invites this Court to transform Title VII into a general

3   civility code regarding conduct outside the workplace, occurring exclusively online, that

4   is *never* sent to Plaintiff, *never* shown to her in the workplace, *never* displayed in the

5   workplace, and *never* discussed with her without her consent.   Defendant respectfully

6   requests that the Court reject Plaintiff's invitation and grant summary judgment in its

7   favor.

8        Dated: March 6, 2023            Respectfully submitted,

9                                        E. MARTIN ESTRADA
                                         United States Attorney
10                                       DAVID M. HARRIS
                                         Assistant United States Attorney
11                                       Chief, Civil Division
                                         JOANNE S. OSINOFF
12                                       Assistant United States Attorney
                                         Chief, General Civil Section
13
                                         /s/ *Zakariya K. Varshovi*
14                                       ZAKARIYA K. VARSHOVI
                                         Assistant United States Attorney
15
                                         *Attorneys for Defendant Merrick Garland*
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

2

The undersigned, counsel of record for Defendant Merrick Garland certifies that

3

this brief contains 4,319 words, which complies with the word limit of L.R. 11-6.1.

4

5

Dated: March 6, 2023                          Respectfully submitted,

6

E. MARTIN ESTRADA
United States Attorney

7

DAVID M. HARRIS
Assistant United States Attorney

8

Chief, Civil Division
JOANNE S. OSINOFF

9

Assistant United States Attorney
Chief, General Civil Section

10

/s/ *Zakariya K. Varshovi*

11

ZAKARIYA K. VARSHOVI
Assistant United States Attorney

12

*Attorneys for Defendant Merrick Garland*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14