1    **BROCK & GONZALES, LLP**
2         6701 CENTER DRIVE WEST, SUITE 610
               LOS ANGELES, CA 90045
3              Tel: (310) 294-9595
               Fax: (310) 961-3673
4    D. AARON BROCK, STATE BAR NO. 241919
     ab@brockgonzales.com
5    CORY H. HURWITZ, STATE BAR NO. 222026
     ch@brockgonzales.com
6    LINDSAY L. BOWDEN, STATE BAR NO. 318685
     lb@brockgonzales.com
7    **Attorneys for Plaintiff**
     LINDSAY OKONOWSKY
8

9              **UNITED STATES DISTRICT COURT**

10

11        **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

12   LINDSAY OKONOWSKY, an          **Case No.: 2:21-cv-07581-VAP-ASx**
     individual,                    Judge: Hon. Virginia A. Phillips
13
                   Plaintiff,       **PLAINTIFF'S OPPOSITION TO**
14                                  **DEFENDANT'S STATEMENT OF**
            vs.                     **UNDISPUTED FACTS AND**
15                                  **CONCLUSIONS OF LAW**
16
     MERRICK GARLAND,               *[Plaintiff's Notice of Opposition and Opposition*
17   ATTORNEY GENERAL UNITED        *to Defendant's Motion for Summary Judgment;*
     STATES DEPARTMENT OF           *Declaration of Lindsay Okonowsky; Declaration*
18   JUSTICE, FEDERAL BUREAU        *of Lindsay L. Bowden; Plaintiff's Written*
     OF PRISONS,                    *Objections to Defendant's Evidence; and*
19                                  *[Proposed] Order re: Plaintiff's Written*
                                    *Objections to Defendant's Evidence.]*
20             Defendants.
21
22                                  **Hearing: April 3, 2023**
23                                  **Time: 2:00 pm**
                                    **Courtroom: 6A**
24
25
26
27
28
                                    1
     **PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**
                         **AND CONCLUSIONS OF LAW**

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Lindsay Okonowsky submits the following Oppositions to Defendant Merrick Garland's Statement of Undisputed Facts and Conclusions of Law in Support of her Opposition to Defendant's Motion for Summary Judgement.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S UNDISPUTED FACTS**

| Def's SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 1. | On February 18, 2020, Plaintiff complained to Acting Warden ("AW") James Engelman regarding content on the Page. | Engleman Decl. ¶ 3 | **1. Disputed.**<br><br>Plaintiff did <u>not</u> complain to Engleman about "content on the Page." Rather, Plaintiff told him: "this Instagram page that is inappropriate, it's racist, it's sexist, it's homophobic. There's some material on that page that could pose a significant public relations issue for the prison and the BOP as a whole if somebody from the public were to see the page. There are, you know, posts that are targeting specific departments. And that was the most significant parts of our conversation." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 27:16-25. |
| 2. | At the time of Plaintiff's meeting | Engleman Decl. ¶ 3 | 2. Undisputed but immaterial. |

BROCK & GONZALES B&G

| | | | |
|---|---|---|---|
| | with AW Engleman, Plaintiff did not know nor identify the author of the Page | | |
| 3. | On February 18, 2020, AW Engleman instructed Special Investigative Agent ("SIA") Victor Gonzales to investigate Plaintiff's complaints. | Engleman Decl. ¶ 4 | **3. Disputed.**<br><br>*See* Plaintiff's Objections to Evidence. |
| 4. | On February 18, 2020, Plaintiff's immediate supervisor, Chief Psychologist Dr. Carl Clegg re-assigned her, with her consent, from FCC Lompoc's Medium Facility to the Low Facility because she believed that staff working in Special Housing Unit ("SHU") likely made the memes on the Page. | Clegg Decl. ¶ 4, Ex. A | **4. Disputed.**<br><br>*See* Plaintiff's Objections to Evidence. |
| 5. | On February 18, 2020, Plaintiff again visited the Page, viewing a meme containing a picture | Varshovi Decl. ¶ 2, Ex. A-1 (Pl.'s Dep. 100:12- | 5. Undisputed. |

3

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | of former Speaker Nancy Pelosi tearing the State of the Union of Address in half, captioned with "When you get butthurt by memes," "Tomorrow's forecast?  Hot enough to melt a snowflake #youcantakeadickbut notajoke." | 100:13); id. ¶ 3, Ex. B-1 (copy of Speaker Pelosi meme) | |
| 6. | Plaintiff admitted that this meme was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Varshovi Decl. ¶ 2, Ex. A-1 (Pl.'s Dep. 100:14-101:5) | **6.  Disputed.**<br><br>While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8.<br><br>Plaintiff explained that the post targeted her because two hours before the post was made, she had conversations at work with Grice, Engleman, and the chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. |

4

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.

Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6.

The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26.

Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.

Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and

5

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1.

Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9.

Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20.

Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33.

Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.

Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic

7

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16.

On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.

Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 4.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 7. | On February 19, 2020, at 7:07 AM, Plaintiff e-mailed the meme to AW Engleman, writing in relevant part, "I think the most recent post I sent you may warrant another conversation. If you have time today, please give me a call . . ." | Engleman Decl. ¶ 5, Ex. A | 7.  Undisputed. |
|---|---|---|---|
| 8. | On February 19, 2020, at 7:50 AM, AW Engelman forwarded Plaintiff's e-mail to SIA Gonzales. | Engleman Decl. ¶ 5, Ex. A | 8.  Undisputed. |
| 9. | On February 19, 2020, SIA Gonzales called Plaintiff to schedule a meeting to discuss her complaints. | Engleman Decl. ¶ 6 | **9.  Disputed.**<br><br>*See* Plaintiff's Objections to Evidence. |
| 10. | On February 26, 2020, SIA Gonzalez met with Plaintiff to discuss her complaints regarding the Page. | Engleman Decl. ¶ 7 | **10.  Disputed.**<br><br>*See* Plaintiff's Objections to Evidence. |
| 11. | On March 7, 2020, at 12:46 PM, Plaintiff e-mailed AW | Engleman Decl. ¶ 8, | 11.  Undisputed. |

9

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | Engleman, attaching a meme from the Page, writing in relevant part "This is completely inappropriate and is setting the tone for a strikingly hostile work environment." | Ex. B, at 1-2 | |
| 12. | The meme, attached to Plaintiff's March 7, 2020 e-mail, which Plaintiff viewed by visiting the Instagram page, captioned a picture of a woman holding a milkshake, with "Feeling cute, might put on a watch later," and "If psychology had to cover the morning watch shifts all weekend, nobody'd [sic] ever go on watch #changemymind." | Engleman Decl. ¶ 8, Ex. B, at 2; Varshovi Decl. ¶ 2, Ex. A-2 (Pl.'s Dep. 102:10-102:12). | **12. Disputed.** The cited evidence does not provide *any* description of this meme. Plaintiff described the meme much differently: "it absolutely targets me" because right before it was posted, Lt. Hellman blocked her from the page and she believed "the woman in the photo is kind of like, you know, it exaggerated likeness to some degree." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 102:10-12; 103:2-25. |
| 13. | Plaintiff asserted that the meme "is derogatory toward women, is critical of women's (specifically my) | Varshovi Decl. ¶ 3, Ex. B-2 | **13. Disputed.** The cited evidence does not provide *any* description of this meme. Plaintiff described the meme much differently saying: "it |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | bodies"), and diminishes the role of Psychology Services . . . and challenges the competency of the Psychology Services department." | | absolutely targets me" because right before it was posted, Lt. Hellman blocked her from the page and she believed "the woman in the photo is kind of like, you know, it exaggerated likeness to some degree."  Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 102:10-12; 103:2-25. |
| 14. | Plaintiff admitted that this meme was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Varshovi Decl. ¶ 2, Ex. A-2 (Pl.'s Dep. 102:13-103:1) | **14. Disputed.**<br><br>While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8.<br><br>Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.<br><br>Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

Union President. Okonowsky Decl. ¶ 6.

The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26.

Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.

Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1.

Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9.

Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33.

Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16.

14

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | | |
|---|---|---|---|---|
| | | | | On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.<br><br>Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 4. |
| 15. | Even after Plaintiff was blocked from viewing the Page that day by its creator, she nevertheless created a fake Instagram account to continue viewing it on a daily basis as she had since February 18, 2020. | Varshovi Decl. ¶ 4, Ex. C, at 3; Varshovi Decl. ¶ 2, Ex. A-2 (Pl.'s Dep. 103:10-103:11) | | **15. Disputed.**<br><br>Plaintiff was told "of course, let [the investigators] know" if the offensive posting "continues to happen." She explained: "So I was really between a rock and a hard place. I was being advised not to look at the page, but then they also told me that they didn't have the resources to monitor the page but to tell them if it kept happening. Right? So I was kind of like -- that's all I could say, I was between a rock and a hard place. Like I |

15

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | | felt…nobody was communicating that they were going to protect me or do any kind of monitoring, and so again, I felt I was on my own and -- and had to take care of myself." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 60:1-20. |
| 16. | On March 9, 2020, at 7:52 AM, AW Engleman forwarded Plaintiff's e-mail to SIA Gonzales. | Engleman Decl. ¶ 8, Ex. B, at 1 | 16.  Undisputed. |
| 17. | On March 9, 2020, AW Engleman directed SIA Gonzales to refer Plaintiff's complaints regarding the Page to the BOP's Office of Internal Affairs, in addition to the ongoing FCC Lompoc investigation. | Engleman Decl. ¶ 9 | 17.  Undisputed. |
| 18. | On March 11, 2020, Plaintiff sent AW Gutierrez a 48-page memo regarding the Page. | Engleman Decl. ¶ 10 | **18.  Disputed.**<br><br>Plaintiff did <u>not</u> send "a 48-page memo regarding the Page." Rather, on March 11, 2020, Okonowsky submitted a 48-page memo to Associate Warden Gutierrez detailing the harassing |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | | memes that continued to be posted by Hellman and detailing why each meme was offensive and harassing. At this time, the page had over 570 posts and Okonowsky's 48-pages memo contained over 30 examples of sexist and harassing posts from the page including those that specifically targeted her and other employees at FCC Lompoc. Okonowsky Decl. ¶ 25, Exh. 1. |
| 19. | Plaintiff asserted that, in addition to the meme picturing Nancy Pelosi, the following memes, which she viewed by visiting the Page, were targeted at her: (1) a picture of "stay in your lane" traffic sign, captioned with "When Psychology tries to tell you where you can n [sic] can't cell somebody"; (2) a picture of a cartoon character appearing sad, captioned with "when psychology doesn't get their way"; (3) a picture of a woman wearing a | Varshovi Decl. ¶ 3, Ex. B-3 (copy of stay in your lane meme); Ex. B-4 (copy of meme of cartoon character); Ex. B-5 (copy of meme of a woman with "struggle is real" sweater); Ex. B-6 (copy of meme of man's face) | **19. Disputed.**<br><br>There is no foundation as to any "assertion" by Plaintiff.  The cited evidence merely states: "Exhibit B-1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact.<br><br>Also, *see* Plaintiff's Objections to Evidence. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS
AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | sweater stating "the struggle is real," captioned with "When you piss of the SHU crew, and now you have to pull your own inmates" and "Don't bite the hand that feeds you"; and (4) an undated picture of a man's face, preceded by a caption stating "When a female co-worker invites guys only for an 'End of Quarter' Party" and followed by the caption: "I'm here for the gang bang." | | |
| 20. | Regarding the meme of "stay in your lane" traffic sign, Plaintiff asserted "This post clearly highlights a lack of respect for psychology services." | Varshovi Decl. ¶ 3, Ex. B-3. | **20.  Disputed.** <br><br> There is no foundation as to any "assertion" by Plaintiff.  The cited evidence merely states: "Exhibit B-1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact. <br><br> Also, *see* Plaintiff's Objections to Evidence. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 21. | Plaintiff admitted the meme of the "stay in your lane" traffic sign was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Varshovi Decl. ¶ 2, Ex. A-3 (Pl.'s Dep. 104:16-105:6) | **21. Disputed.**<br><br>The cited evidence does not provide *any* description of this meme.<br><br>While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8.<br><br>Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.<br><br>Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6.<br><br>The prison and working conditions were regularly discussed as well as |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26.

Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.

Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1.

Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9.

Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20.

Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

people were talking about the page at work. Okonowsky Decl. ¶ 33.

Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.

Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a

previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16.

On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.<br><br>Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 4. |
|---|---|---|---|
| 22. | Regarding the meme of a cartoon character appearing sad, Plaintiff asserted that "During a SHU training earlier this year, SHU staff were argumentative regarding their job role of removing inmates from their cells for appointments with Psychology Services. . . . the staff member 'got his way' and me, as 'Psychology,' did not." | Varshovi Decl. ¶ 3, Ex. B-4 | **22. Disputed.**<br><br>There is no foundation as to any "assertion" by Plaintiff. The cited evidence merely states: "Exhibit B-1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact.<br><br>Also, *see* Plaintiff's Objections to Evidence. |
| 23. | Plaintiff admitted that the meme of a | Varshovi Decl. ¶ 2, | **23. Disputed.** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| cartoon character appearing sad was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Ex. A-4 (Pl.'s Dep. 106:6-106:23) | The cited evidence does not provide *any* description of this meme.<br><br>Plaintiff explained an FCC Lompoc employee commented on the post and "the employee's comment references a SHU meeting that I and only I, the only psychologist, was part of. So that to me indicates that yes, other people had the idea that it targeted me as well." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 108:1-6.<br><br>While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8.<br><br>Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6.

The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26.

Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.

Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1.

Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20.

Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33.

Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.

Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | | like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16.<br><br>On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.<br><br>Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 4. |
| 24. | Regarding the meme of a woman wearing a sweater stating "the struggle is real," Plaintiff asserted that "I believe these posts targeted me as the former SHU psychologist. . . . I | Varshovi Decl. ¶ 3, Ex. B-5 | **24.  Disputed.**<br><br>There is no foundation as to any "assertion" by Plaintiff.  The cited evidence merely states: "Exhibit B-1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | believe the posts also reflect Mr. Hellman's pattern of critiquing my physical appearance." | | |
| 25. | Plaintiff admitted that the meme of a woman wearing a sweater stating "the struggle is real," was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Varshovi Decl. ¶ 2, Ex. A-5 (Pl.'s Dep. 116:15-117:7) | **25. Disputed.** <br><br> The cited evidence does not provide *any* description of this meme. <br><br> While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. <br><br> Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. <br><br> Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Union President. Okonowsky Decl. ¶ 6.

The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26.

Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.

Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1.

Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9.

Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33.

Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.

Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 4. |
| 26. | Plaintiff admitted that the meme of a man's face was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Varshovi Decl. ¶ 2, Ex. A-6 (Pl.'s Dep. 109:2-109:17) | **26. Disputed.**

The cited evidence does not provide *any* description of this meme.

While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | | Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. |
| | | | | Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. |
| | | | | The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. |
| | | | | Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. |
| | | | | Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1.

Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9.

Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20.

Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33.

Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.

Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16.

On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.

Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 4.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 27. | On March 11, 2020, at 3:41 PM, Plaintiff e-mailed AW Engelman a copy of her memo. At 7:47 AM, AW Engelman forwarded Plaintiff's memo to SIA Gonzales. | Engleman Decl. ¶ 10, Ex. C | 27. Undisputed. |
|---|---|---|---|
| 28. | Also on March 11, 2020, AW Engelman directed SIA Gonzales to provide Ms. Okonowsky's memo to OIA in connection with the original referral submitted on March 9, 2020. | Engleman Decl. ¶ 11 | 28. Undisputed. |
| 29. | On March 11, 2020, as a result of Plaintiff's allegation in her memo as to the identity of the Page's creator that individual was assigned to a different facility at FCC Lompoc while her complaints were investigated. | Engleman Decl. ¶ 12 | **29. Disputed.**<br><br>Plaintiff continued to see the Page's creator Lt. Hellman at work. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 36:25-38:2; 39:18-23.<br><br>On March 9, 2020, Plaintiff was required to work in the Receiving and Discharge department along with Lt. Hellman. Okonowsky Decl. ¶ 24. |

38

| | | | | |
|---|---|---|---|---|
| | | | | Not only did she feel that her complaints were ignored, but his physical presence caused her to shift focus from helping prisoners with their mental health needs – i.e. her job - to reliving Lt. Hellman's harassment and standing guard in case he decided to further harass or retaliate against her. Okonowsky Decl. ¶ 24.<br><br>During Defendant's alleged investigation, Plaintiff's complaints were repeatedly dismissed and the memes only continued. Okonowsky Decl. ¶ 27. |
| 30. | On March 13, 2020, Dr. Clegg referred Plaintiff to the Employment Assistance Program ("EAP"), which provides free, voluntary counseling to employees. | Clegg Decl. ¶ 5, Ex. B | | **30.  Disputed.**<br><br>Clegg referred Plaintiff to the Employment Assistance Program ("EAP") as it offers "confidential counseling to BOP employees **to help them address concerns that may negatively impact job performance** and overall well-being." Engelman Decl., ¶ 19 (emphasis added). |
| 31. | On March 27, 2020, at 9:32 PM, Plaintiff e-mailed AW Engleman, attaching a meme she viewed on the Page, asserting | Engleman Decl. ¶ 13, Ex. D, at 1; Varshovi Decl. ¶ 2, Ex. A-7 | | 31.  Undisputed. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| "It is obvious these posts are targeted toward me.  Is anything going to be done to curb this behavior as the investigation takes place?  I shouldn't have to work in an environment with people who refer to me as a [c***] on a public forum."  The next day, at 11:50 AM, AW Engelman forwarded Plaintiff's e-mail to SIA Gonzales. | (121:8-122:9) | | |
| 32. | The meme had the caption "The one staff member that's a giant [c***], loves inmates, and relentlessly tells on staff," with a colon before a picture of "United States Penitentiary Big Sandy, Kentucky," in which "Big Sandy" is underlined in red, with a second caption beneath stating "You | Engleman Decl. ¶ 13, Ex. D, at 2 | **32.  Disputed.**<br><br>The cited evidence does not provide *any* description of this meme. Rather, Plaintiff described this meme as "bullying and harassment." Engleman Decl. ¶ 13, Ex. D, at 1; Varshovi Decl. ¶ 2, Ex. A-7 (121:8-122:9) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | know, on account of their vaganga [sic]." | | |
| 33. | Plaintiff admitted that this meme was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Varshovi Decl. ¶ 2, Ex. A-7 (121:10-122:5) | **33. Disputed.**<br><br>Plaintiff explained, "All of the people on the next page that liked the post are Lompoc employees. So whether it's displayed or not, it's something that permeated the workplace. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 121:16-23.<br><br>While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8.<br><br>Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.<br><br>Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and |

41

Union President. Okonowsky Decl. ¶ 6.

The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26.

Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8.

Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1.

Those offensive memes would often get "liked" and commented on by the other employees.  Okonowsky Decl. ¶¶ 7, 9.

Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | | Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33.<br><br>Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | | |
|---|---|---|---|---|
| | | | | On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.<br><br>Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 4. |
| 34. | In early April 2020, Barbara Von Blanckensee was assigned as Warden at FCC Lompoc. | Engleman Decl. ¶ 14 | 34.  Undisputed. | |
| 35. | Shortly thereafter, Warden Von Blanckensee was assigned as Warden, AW Engleman apprised her of Plaintiff's complaints regarding the Page and the ongoing | Engleman Decl. ¶ 15 | 35.  Undisputed. | |

45

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | investigation into the same. | | |
| 36. | On April 13, 2020, Warden Von Blanckensee convened a six-member Threat Assessment Team to review Plaintiff's concerns regarding the Page. | Engleman Decl. ¶ 16 | 36.  Undisputed. |
| 37. | On April 13, 2020, the Team reviewed Plaintiff's March 11, 2020 memo and interviewed her in-person. | Engleman Decl. ¶ 17, Ex. E, at 2. | **37.  Disputed.**<br><br>Plaintiff "sat down with a group of people and they asked [her] questions and -- yeah."  Plaintiff was told that that he "wouldn't want to fight this case, which [she] thought was striking and stuck with [her] and kind of validated some of [her] concerns." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 131:3-13; 132:7-13. |
| 38. | During her April 13, 2020, Plaintiff stated that she had "no personal or direct knowledge" as to who ran the Page and that the offending conduct occurred exclusively online. | Engleman Decl. ¶ 17, Ex. E, at 2. | **38.  Disputed.**<br><br>During the meeting, Plaintiff did not state that she had "no personal or direct knowledge as to who ran the page and that the offending conduct occurred exclusively online." She would not have said that because it is not true.  She was told prior to this meeting that Lt. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | Hellman was operating the page so she would not have said she did not know.  Also, she. did not ever believe that the harassment occurred "exclusively online." As she explained to the investigators, she felt the harassment not only occurred on the page but bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. |
|---|---|---|---|
| 39. | On April 15, 2020, the Team interviewed the Page's creator in-person upon his return from previously scheduled leave. | Engleman Decl. ¶ 17, Ex. E, at 2. | 39.  Undisputed. |
| 40. | The Page's creator, a correctional officer, admitted that he was the Page's owner and sole contributor, and that the "account was just a joke, 'dark prison humor,' and a way for him to blow off steam." | Engleman Decl. ¶ 17, Ex. E, at 2. | **40. Disputed.**<br><br>The Page's creator was not "a correctional officer."  He was Lieutenant Hellman, an admitted Supervisor. Okonowsky Decl. ¶ 5; Bowden Decl. ¶ 5, Exh. D.<br><br>The site was not "just a joke" or "a way for [Lieutenant Hellman] to blow off steam."  Rather, this was blatant harassment that violated BOP policy.  Engleman Decl. ¶ 17, Exh. E. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | | On April 16, 2020, the Threat Assessment Team issued a report and determined that Hellman "unconvincingly" denied that the memes were directed at Okonowsky. Engleman Decl. ¶ 17, Exh. E.<br><br>Additionally, Threat Assessment Team determined that "Hellman's actions towards Plaintiff (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within this 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E.<br><br>On April 16, 2020, Defendant also issued Lt. Hellman a referral to the Employee Assistance Program. Engleman Decl. ¶ 19.<br><br>Even after Lt. Hellman was issued a cease-and-desist letter on April 16, 2020, almost two months after Plaintiff's initial complaints, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and one mocking the workplace violence committee |
|---|---|---|---|---|

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | | process. Okonowsky Decl. ¶ 34, Exhs. 4-5. |
| 41. | But the Page's creator denied that any of his memes were directed at Plaintiff and that he never intended to offend her nor anyone else. | Engleman Decl. ¶ 17, Ex. E, at 2. | **41.  Disputed.**<br><br>On April 16, 2020, the Threat Assessment Team issued a report and determined that Hellman "unconvincingly" denied that the memes were directed at Okonowsky. Engleman Decl. ¶ 17, Exh. E.<br><br>Additionally, Threat Assessment Team determined that "Hellman's actions towards Plaintiff (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within this 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E. |
| 42. | On April 16, 2020, the Team issued a memo to Warden Von Blanckensee, concluding that Plaintiff "did not suffer physical harm or damage to her property, nor was she exposed to potential danger or harm as a result of" the Page's creator actions. | Engleman Decl. ¶ 17, Ex. E, at 3. | 42.  Undisputed. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| 43. | But because the Team found Page's creator actions towards Plaintiff, specifically "posting of several memes that reasonably appear to have been directed solely at her," could constitute bullying, the Team recommended that Page's creator be a Cease-and-Desist Order and that he and Plaintiff should continue to remain in separate complexes. | Engleman Decl. ¶ 17, Ex. E, at 4-5. | **43. Disputed.**<br><br>On April 16, 2020, the Threat Assessment Team issued a report and determined that Hellman "unconvincingly" denied that the memes were directed at Plaintiff. Additionally, Threat Assessment Team determined that "Hellman's actions towards Plaintiff (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within this 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 2-4.<br><br>The Threat Assessment Team also made several recommendations to the Agency including referring Hellman to the Office of Internal Affairs for possible policy violations; issuing a cease-and-desist letter from posting on social media any memes/information which violates Agency policy; and a referral to the Employee Assistance Program. Engleman Decl. ¶ 17, Exh. E, at 4-5.<br><br>On April 16, 2020, Defendant also issued Lt. Hellman a referral to the Employee Assistance Program. Engleman Decl. ¶ 19. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | | This Cease-and-Desist Order reminded Lt. Hellman that as a "supervisor" he is held to a higher standard of conduct. Bowden Decl. ¶ 5, Exh. D.

Even after Lt. Hellman was issued a cease-and-desist letter on April 16, 2020, almost two months after Plaintiff's initial complaints, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and one mocking the workplace violence committee process. Okonowsky Decl. ¶ 34, Exhs. 4-5. |
| 44. | On April 16, 2020, following the Threat Assessment Team's recommendations, a Cease-and-Desist Order was issued to the Page's creator, which ordered the Page's creator to cease and desist posting content on social media in violation of BOP policy, including content that could reasonably be deemed harassing or | Engleman Decl. ¶ 18 | | **43. Disputed.**

This Cease-and-Desist Order reminded Lt. Hellman that as a "supervisor" he is held to a higher standard of conduct. Bowden Decl. ¶ 5, Exh. D.

However, after Lt. Hellman was issued a cease-and-desist letter on April 16, 2020, almost two months after Plaintiff's initial complaints, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and one mocking the workplace violence committee process. Okonowsky Decl. ¶ 34, Exhs. 4-5. |

51

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | bullying of another employee. | | |
| 45. | Also on April 16, 2020, following the Threat Assessment Team's recommendations, a referral to the Employee Assistance Program was issued to the Page's creator, which offers free, voluntary confidential counseling to BOP employees to help them address concerns that may negatively impact job performance and overall well-being. | Engleman Decl. ¶ 19 | 45.  Undisputed. |
| 46. | Subsequently, Plaintiff complained of new memes she found offensive, none of which she alleged were directed at her. | Pl.'s Compl. ¶ 25 | **46.  Disputed.**<br><br>The cited evidence does not support this fact. The cited evidence merely states: "Following the Threat Assessment Report on April 16, 2020, almost two months after Plaintiff's initial complaints, Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services."  There is no indication that Plaintiff complained about them or whether any were |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | directed towards her. Pl.'s Compl. ¶ 25. |
|---|---|---|---|
| | | | Even after the Threat Assessment Team was convened, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and at least one mocking the workplace violence committee meeting process, which Okonowsky took as ridiculing her. Okonowsky submitted several additional memorandums to Defendant detailing the continued posts including one on April 27, 2020 and another on May 12, 2020. Okonowsky Decl. ¶ 34, Exhs. 4-5. |
| | | | Plaintiff also explained that when Hellman continued to post memes after the workplace violence committee meeting she was scared because he was "flaunting his disregard for that meeting" and "didn't take it seriously and he didn't stop posting at that point." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 127:14-128:11. |
| 47. | On May 12, 2020, the Page's creator deleted the Page entirely. | Pl.'s Compl. ¶ 26 | **47.  Disputed.** The cited evidence does not support this fact. The cited evidence merely states: "Plaintiff initially complained about Instagram page on February 18, 2020; however, the page was not taken down until after May 12, |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | 2020." There is no indication that Hellman was the one who "deleted" the entire page or any portion of it. Also, the cited evidence states that the page was "taken down" – not "deleted." Pl.'s Compl. ¶ 26 |
|---|---|---|---|
| 48. | Following the deletion of the Page, Plaintiff made no further complaints and remained a BOP employee for over two years. | Varshovi Decl. ¶ A, Ex. A-8 (Pl.'s Dep. 92:8-92:12); Pl.'s Compl. ¶ 26 | **48. Disputed.**<br><br>The cited evidence does not support this fact. The cited evidence merely states: "Plaintiff initially complained about Instagram page on February 18, 2020; however, the page was not taken down until after May 12, 2020." The cited evidence states that the page was "taken down" – not "deleted." Pl.'s Compl. ¶ 26 |
| 49. | Plaintiff continued to receive retention bonuses. | Varshovi Decl. ¶ 2, Ex. A-8 (Pl.'s Dep. 87:13-87:16) | 49.  Undisputed but immaterial. |
| 50. | On January 24, 2021, she was promoted to a new position at Federal Correctional Institute Seagoville, Texas, which she received along with a pay raise. | Varshovi Decl. ¶ 2, Ex. A-8 (Pl.'s Dep. 91:13-91:25) | 50.  Undisputed but immaterial. |
| 51. | In July of 2022, Plaintiff resigned | Varshovi Decl. ¶ 2, | 51.  Undisputed but immaterial. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | from the Bureau of Prisons. | Ex. A-8 (Pl.'s Dep. 90:21) | |
|---|---|---|---|

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

# PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS

| Pl.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 1. | Lindsay Okonowsky, Ph.D., a 35-year-old female, began working as a GS-12 Staff Psychologist at FCC Lompoc on September 17, 2018. | Okonowsky Decl. ¶ 2. |
| 2. | She was never disciplined and received consistent positive reviews and feedback. | Okonowsky Decl. ¶ 3. |
| 3. | As a Staff Psychologist, Dr. Okonowsky completed intakes, protective custody reviews, sexual abuse interventions, responded to spontaneous mental health demands/crises, and facilitated group and individual treatment for patients with serious mental illnesses, among other duties. | Okonowsky Decl. ¶ 3. |
| 4. | On February 16, 2020, Dr. Okonowsky became aware of the Instagram page "8_and_hitthe_gate" when the page came up on her personal Instagram as a suggested page she should follow. | Okonowsky Decl. ¶ 4. |
| 5. | Lieutenant Steven Hellman created and ran the Instagram page "8_and_hitthe_gate." | Okonowsky Decl. ¶ 4.<br><br>Engleman Decl. ¶ 17, Ex. E, at 2.<br><br>Bowden Decl. ¶ 4, Exh. C, Hellman EEO Decl. at 4. |
| 6. | Lt. Hellman was a supervisor at FCC Lompoc and worked with Dr. Okonowsky. | Okonowsky Decl. ¶ 5.<br><br>Bowden Decl. ¶ 5, Exh. D. |

56

PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| 7. | As a Lieutenant, Lt. Hellman had the authority to supervise the custody staff and oversee operations. | Okonowsky Decl. ¶ 5. |
|---|---|---|
| 8. | Lt. Hellman was also responsible for overseeing the facility, had several direct reports, and was a member of the Special Investigative Services ("SIS"). | Okonowsky Decl. ¶ 5. |
| 9. | As an SIS Lieutenant, Lt. Hellman was also responsible for investigating suspected violations of the law and prison rules and policies by both inmates and staff. | Okonowsky Decl. ¶ 5. |
| 10. | Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. | Okonowsky Decl. ¶ 6. |
| 11. | The prison and working conditions were regularly discussed as well as work meetings and events. | Okonowsky Decl. ¶¶ 6-7, 26. |
| 12. | For example, Lt. Hellman posted a meme of Jefferey Epstein on Valentine's Day and dedicated it to the "The SHU Crew" (aka the Special Housing Unit) at FCC Lompoc and around that time, Dr. Okonowsky heard the officers in the SHU Department talking about how funny they thought the post was. | Okonowsky Decl. ¶ 7. |
| 13. | Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. | Okonowsky Decl. ¶ 8. |
| 14. | Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. | Okonowsky Decl. ¶ 6. |
| 15. | Those offensive memes would often get "liked" and commented on by the other employees. | Okonowsky Decl. ¶¶ 7, 9. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 16. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Exh. 1, at 32. |
|---|---|---|
| 17. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Exh. 1, at 31. |
| 18. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Exh. 1, at 39. |
| 19. | Dr. Okonowsky complained of several harassing memes, including: | Okonowsky Decl. ¶ 34, Exh. 5, at 3. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| |  | | |
| 20. | Dr. Okonowsky complained of several harassing memes, including:<br><br> | | Okonowsky Decl. ¶ 25, Exh. 1, at 32. |
| 21. | Dr. Okonowsky complained of several harassing memes, including:<br><br> | | Okonowsky Decl. ¶ 25, Exh. 1, at 46. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 22. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Exh. 1, at 33. |
|---|---|---|
| 23. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 34, Exh. 4, at 6. |
| 24. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 34, Exh. 4, at 5. |
| 25. | Dr. Okonowsky complained of several harassing memes, including: | Okonowsky Decl. ¶ 34, Exh. 5, at 10. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| |  | | |
| 26. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 34, Exh. 4, at 3. |
| 27. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Exh. 1, at 22. |
| 28. | Dr. Okonowsky was shocked at the content, especially since Lt. Hellman was a supervisor and Lieutenant at her workplace. | Okonowsky Decl. ¶ 9. |
| 29. | As a woman, she was especially offended at the sexist memes that were overtly demeaning and derogatory. | Okonowsky Decl. ¶ 9. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 30. | Dr. Okonowsky considered Lt. Hellman a high-level leader, and the co-worker "likes," and comments caused her concern. | Okonowsky Decl. ¶ 9. |
|---|---|---|
| 31. | She also believed that his page violated FCC Lompoc policy. | Okonowsky Decl. ¶¶ 9, 25, Exh. 1. |
| 32. | On February 17, 2020, the day after she found the Instagram page, Dr. Okonowsky reported the page to two supervisors, including her immediate supervisor, Dr. Carl Clegg and Drug Abuse Program Coordinator, Dr. Anne Clemmer. | Okonowsky Decl. ¶ 10.<br><br>Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 25:21-26:11. |
| 33. | On February 18, 2020, Dr. Okonowsky complained to Safety Manager Robert Grice about the page. | Okonowsky Decl. ¶ 11. |
| 34. | Grice was one of many employees that regularly liked and commented on the memes. | Okonowsky Decl. ¶ 11. |
| 35. | He said he thought the posts were "funny" and told her, "Sorry, not sorry" and told her to get thicker skin. | Okonowsky Decl. ¶ 11. |
| 36. | Dr. Okonowsky was shocked. | Okonowsky Decl. ¶ 11. |
| 37. | Later that day, Dr. Okonowsky saw a meme of Nancy Pelosi ripping up President Trump's State of the Union address on Lt. Hellman's page, with captions that said, "*When you get butt hurt by memes*" and "*Tomorrow's forecast: hot enough to melt a snowflake*" and the hashtag, *#youcantakeadickbutnotajoke*. | Okonowsky Decl. ¶ 12. |
| 38. | Dr. Okonowsky felt the meme was in response to her complaint just hours earlier. | Okonowsky Decl. ¶ 12. |
| 39. | She did not feel safe at work. | Okonowsky Decl. ¶ 12.<br><br>Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. |
| 40. | On February 18, 2020, Dr. Okonowsky spoke with Acting Warden James Engleman about the page and the offensive posts. | Okonowsky Decl. ¶ 13. |

62

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 41. | Engleman said he would have SIA Victor Gonzales, who was Lt. Hellman's supervisor, submit a referral to the Office of Internal Affairs. | Okonowsky Decl. ¶ 13. |
|---|---|---|
| 42. | Dr. Okonowsky met with Gonzales and shared some of the printed memes. | Okonowsky Decl. ¶ 14. |
| 43. | Gonzales told her words to the effect of: "*I looked at the page and I don't really see anything that's a problem.*" | Okonowsky Decl. ¶ 14. |
| 44. | Despite many of the memes being obviously sexist, he insisted that Dr. Okonowsky explain why each one was sexist and harassing. | Okonowsky Decl. ¶ 14. |
| 45. | During a second meeting a week later, Dr. Okonowsky explained to Gonzales that the page contained posts that made explicit references to FCC Lompoc and that people working at prison were commenting and that only employees of FCC Lompoc would understand most of the purported humor. | Okonowsky Decl. ¶ 15. |
| 46. | Later, Dr. Okonowsky spoke with Defendant's Human Resources Manager, Taulbee McGinnis, who was an active follower of Lt. Hellman's page and told her the memes were "funny." | Okonowsky Decl. ¶ 16. |
| 47. | Throughout February and March 2020, Dr. Okonowsky complained to Dr. Clemmer that many co-workers were "liking" Lt. Hellman's posts and regularly interacting with the page. | Okonowsky Decl. ¶ 17. |
| 48. | Dr. Okonowsky told Dr. Clemmer that she feared retaliation and expressed concern that her complaints were not taken seriously because the investigators (i.e. the acting HR Manager, Union President and SIS staff) were followers of the page themselves. | Okonowsky Decl. ¶ 17. |
| 49. | Lt. Hellman's postings continued to offend Dr. Okonowsky. | Okonowsky Decl. ¶ 18. |

63

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 50. | Many of the posts were critical of her as a female employee. | Okonowsky Decl. ¶ 18. |
|---|---|---|
| 51. | Dr. Okonowsky feared that since many employees liked and commented on the posts targeting her, her physical workspace could be in danger. | Okonowsky Decl. ¶ 18. |
| 52. | She worked in a dangerous Federal Prison and if her co-workers were influenced by Lt. Hellman's disrespect towards her and other females, safety could be compromised. | Okonowsky Decl. ¶ 18. |
| 53. | She wondered: if I'm attacked by an inmate, will Lt. Hellman's crew help me or treat me like the female joke he portrays? | Okonowsky Decl. ¶ 18. |
| 54. | Dr. Okonowsky repeatedly complained that she was offended by the posts and expressed that they affected her at work because she felt ostracized at the brunt of jokes and was constantly worried about which employees had seen her targeted memes. | Okonowsky Decl. ¶ 19. |
| 55. | Because of the harassment and effects on her mental health, her productivity suffered, and she had to work harder to get the same tasks completed. | Okonowsky Decl. ¶ 19. |
| 56. | Dr. Okonowsky's fears were realized after she heard conversations among co-workers discussing Lt. Hellman's page. | Okonowsky Decl. ¶ 20. |
| 57. | She also witnessed co-workers discussing the content of the page during working hours. | Okonowsky Decl. ¶ 20. |
| 58. | Dr. Okonowsky was confident that any employees who viewed the page would know that she was the subject of the offensive memes. | Okonowsky Decl. ¶ 20. |
| 59. | On March 7, 2020, Dr. Okonowsky was shocked to see Lt. Hellman posted a meme that was clearly targeting her. | Okonowsky Decl. ¶ 21. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| 60. | Dr. Okonowsky complained of several harassing memes, including:<br> | Okonowsky Decl. ¶ 25, Exh. 1, at 26. |
| 61. | The meme shows Dr. Okonowsky's likeness and included comments that were derogatory towards women. | Okonowsky Decl. ¶ 21. |
| 62. | The meme posted depicted a curvy woman in minimal clothing, coyly posed, and stated, "Feeling cute, might put one on watch later." The caption of the post stated, "If psychology had to cover the morning watch shifts all weekend, nobody'd ever go on [suicide] watch #changemymind." | Okonowsky Decl. ¶¶ 21, 25, Exh. 1, at 26. |
| 63. | Seventeen people "liked" the post (many of whom work at FCC Lompoc) and two FCC Lompoc employees commented on the post. | Okonowsky Decl. ¶¶ 21, 25, Exh. 1, at 26. |
| 64. | On March 7, 2020, Dr. Okonowsky reported to Dr. Clegg and Engelman that the social media posts targeting her on the Lompoc page had continued. | Okonowsky Decl. ¶ 22. |
| 65. | The following day, Gonzales called Dr. Okonowsky and informed her that he had not yet submitted the referral to the Office of Inspector General because he "*could not figure out how to print the memes*" and "*had other things going on.*" | Okonowsky Decl. ¶ 23. |
| 66. | On March 9, 2020, Dr. Okonowsky expressed her frustration to Dr. Clemmer that the harassment was continuing. | Okonowsky Decl. ¶ 24. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 67. | Later, Dr. Okonowsky was required to work in the Receiving and Discharge department along with Lt. Hellman. | Okonowsky Decl. ¶ 24. |
|---|---|---|
| 68. | She was petrified. | Okonowsky Decl. ¶ 24. |
| 69. | Not only did she feel that her complaints were ignored, but his physical presence caused her to shift focus from helping prisoners with their mental health needs – i.e. her job - to reliving Lt. Hellman's harassment and standing guard in case he decided to further harass or retaliate against her. | Okonowsky Decl. ¶ 24. |
| 70. | On March 11, 2020, Dr. Okonowsky submitted a 48-page memo to Associate Warden Gutierrez detailing the harassing memes that continued to be posted by Lt. Hellman and detailing why each meme was offensive and harassing. | Okonowsky Decl. ¶ 25, Exh. 1. |
| 71. | At this time, the page had over 570 posts and Dr. Okonowsky's 48-pages memo contained over 30 examples of sexist and harassing posts from the page including those that specifically targeted her and other employees at FCC Lompoc. | Okonowsky Decl. ¶ 25, Exh. 1. |
| 72. | For example, there was a meme that said, "*When psychology services doesn't get their way and they cry*" and an FCC Lompoc employee posted a comment directly referencing a SHU meeting, which was attended by Dr. Okonowsky and where a correctional officer told her: "*I intentionally don't help you.*" | Okonowsky Decl. ¶ 26. |
| 73. | Dr. Okonowsky then saw the meme referencing her job at psychological services, that several FCC Lompoc employees had liked the meme including Grice, and that another FCC Lompoc employee who was also at that meeting left | Okonowsky Decl. ¶ 26. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | | |
|---|---|---|---|
| | | a comment referencing this specific workplace interaction that Dr. Okonowsky was involved in. | |
| | 74. | Dr. Okonowsky's complaints were repeatedly dismissed by the Defendant and the memes only continued. | Okonowsky Decl. ¶ 27. |
| | 75. | On March 13, 2020, instead of addressing Dr. Okonowsky's complaints of harassment, Dr. Okonowsky was provided a referral to Defendant's Employee Assistance Program, which provides counseling to Defendant's employees to help them address concerns that may negatively impact job performance and overall well-being. | Okonowsky Decl. ¶ 27.<br><br>Engelman Decl. ¶ 19. |
| | 76. | On March 27, 2020, Dr. Okonowsky submitted a memo to Defendant detailing how Lt. Hellman continued to post offensive and sexist comments, including those clearly targeting her. | Okonowsky Decl. ¶ 28, Exh. 2. |
| | 77. | For example, one new meme suggested that when female coworkers say, "Call me if you need anything," male staff think, "Do you have anywhere I can put my boner?" | Okonowsky Decl. ¶ 28, Exh. 2. |
| | 78. | Dr. Okonowsky detailed in her memo how Defendant had failed to promptly investigate her complaints and stop the harassing conduct. | Okonowsky Decl. ¶ 28, Exh. 2. |
| | 79. | That same day, March 27, 2020, another meme targeting Dr. Okonowsky was posted after Lt. Hellman learned of her complaints and clearly referred to Dr. Okonowsky as a "*giant cunt*" and "relentlessly tells on staff." | Okonowsky Decl. ¶ 29. |
| | 80. | Several FCC Lompoc staff members "liked" the post, including Grice, who Dr. Okonowsky previously complained to. | Okonowsky Decl. ¶ 29. |
| | 81. | On March 30, 2020, Dr. Okonowsky submitted another memorandum and | Okonowsky Decl. ¶ 31, Exh. 3, at 2. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| | | |
|---|---|---|
| | included the meme that referred to me as a "giant cunt."  | |
| 82. | On March 30, 2020, Dr. Okonowsky submitted another memorandum and included the meme that referred to me as a "giant cunt" and had several employee followers.  | Okonowsky Decl. ¶ 31, Exh. 3, at 3. |
| 83. | Dr. Okonowsky immediately complained to Engleman. | Okonowsky Decl. ¶ 30. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 84. | However, Engleman did not investigate any of Dr. Okonowsky's complaints and only forwarded them on to Gonzales. | Bowden Decl. ¶ 2, Exh. B, Engleman Depo. 7:8-8:4. |
|---|---|---|
| 85. | On April 13, 2020, more than two months after Dr. Okonowsky's initial complaints, a Threat Assessment Team was convened to review Dr. Okonowsky's "concerns about [a] hostile work environment and social media use in violation of policy," as detailed in a memorandum and supporting documentation she submitted to management on March 11, 2020. | Okonowsky Decl. ¶ 32.<br><br>Engleman Decl. ¶ 17, Exh. E, at 1. |
| 86. | Dr. Okonowsky also explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. | Okonowsky Decl. ¶ 33. |
| 87. | During meeting, Dr. Okonowsky was advised to both not look at the page but also to continue to look at the page to report any additional posts. | Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 60:1-20. |
| 88. | Dr. Okonowsky did not consent to continue viewing the page, she was told by management that she needed to. | Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 60:1-20. |
| 89. | Significantly, on April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. | Engleman Decl. ¶ 17, Exh. E, at 2. |
| 90. | Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been 'directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. | Engleman Decl. ¶ 17, Exh. E, at 4. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 91. | The Threat Assessment Team also made several recommendations to Defendant including referring Lt. Hellman to the Office of Internal Affairs for possible policy violations; issuing a cease-and-desist letter from posting on social media any memes/information which violates Agency policy; and a referral to the Employee Assistance Program. | Engleman Decl. ¶ 17, Exh. E, at 4-5. |
|---|---|---|
| 92. | Defendant followed the recommendations. On April 16, 2020, Defendant issued Lt. Hellman a Cease-and Desist Order, ordering him to cease and desist posting content on social media in violation of Defendant's policies, including content that could reasonably be deemed as harassing or bullying of another employee and any information which discredits the Bureau of Prisons. | Engleman Decl. ¶ 18. |
| 93. | This Cease-and-Desist Order reminded Lt. Hellman that as a "supervisor" he is held to a higher standard of conduct. | Bowden Decl. ¶ 5, Exh. D. |
| 94. | On April 16, 2020, Defendant also issued Lt. Hellman a referral to the Employee Assistance Program. | Engleman Decl. ¶ 19. |
| 95. | Even after Lt. Hellman was issued a cease-and-desist letter on April 16, 2020, almost two months after Dr. Okonowsky's initial complaints, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and one mocking the workplace violence committee process. | Okonowsky Decl. ¶ 34, Exhs. 4-5. |
| 96. | Dr. Okonowsky initially complained about Instagram page on February 18, 2020; however, the page was not taken down until after May 12, 2020. | Okonowsky Decl. ¶ 35. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

| 97. | On January 24, 2021, because of the harassment she experienced at FCC Lompoc, Dr. Okonowsky transferred to FCC Seagoville, TX. | Okonowsky Decl. ¶ 36. |
|---|---|---|
| 98. | On July 6, 2022, Dr. Okonowsky resigned from Defendant and now works as a psychologist for Dallas Fire-Rescue. | Okonowsky Decl. ¶ 37. |
| 99. | Lt. Hellman admits he ultimately took the page down because of Dr. Okonowsky's complaints and the related investigation. | Bowden Decl. ¶ 4, Exh. C, Hellman EEO Decl. at 3-4. |
| 100. | However, Lt. Hellman also claims that he was never interviewed as part of Defendant's alleged investigation. | Bowden Decl. ¶ 4, Exh. C, Hellman EEO Decl. at 3-4. |
| 101. | Defendant also continues to allow its staff to be targeted by misogynistic Instagram posts. | https://www.ktvu.com/news/whistleblower-outs-racist-misogynistic-instagram-page-at-california-federal-prison |
| 102. | A copycat account from FCC Victorville made the news in 2022. | https://www.ktvu.com/news/whistleblower-outs-racist-misogynistic-instagram-page-at-california-federal-prison |

DATED:  March 13, 2023          BROCK & GONZALES, LLP

By: _____

D. AARON BROCK

CORY H. HURWITZ

LINDSAY L. BOWDEN

Attorneys for Plaintiff

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**

**PROOF OF SERVICE**
UNITED STATES DISTRICT COURT

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 6701 Center Drive West, Ste. 610, Los Angeles, CA 90045.

On March 13, 2023, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW** on the interested parties in this action, addressed as follows:

Zak Varshovi
**UNITED STATES ATTORNEY'S OFFICE**
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Zakariya.varshovi@usdoj.gov
*Attorneys for Defendants, MERRICK B. GARLAND, ATTORNEY GENERAL, UNITED STATES DEPARTMENT OF JUSTICE, BUREAU OF PRISONS*

☒ **By E-Mail**, I transmitted the document to the e-mail address of the addressee(s).

☐ **By CM/ECF** Notice of Electronic Filing by causing such document(s) listed above to be served through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth in the service list obtained from this Court on the Electronic Mail Notice List.

☐ **By U.S. Mail**, I deposited such envelope(s) in the mail at Los Angeles, California, with postage thereon fully prepaid.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **By Personal Service**, I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on March 13, 2023, at Los Angeles, California.

Jessica Sanchez