E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
ZAKARIYA K. VARSHOVI[1]
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-3994
        Facsimile: (213) 894-7819
        E-mail: zakariya.varshovi@usdoj.gov
Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LINDSAY OKONOWSKY,<br><br>*Plaintiff*,<br><br>v.<br><br>MERRICK GARLAND,<br><br>*Defendant*. | No. CV 21-07581-VAP-AS<br><br>**DEFENDANT'S REPLY IN SUPPORT OF HIS STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW**<br><br>Hon. Virginia A. Phillips |

---

[1] Admitted to practice under Local Rule 83-2.1.4.1. *See* Order, In Re Application of Zakariya K. Varshovi for Admission Pursuant to Local Rule 83-2.1.4.1, C.D. Cal. No. 2:22-cm-14-PSG (Jan. 30, 2023).

Defendant Merrick Garland in his official capacity as Attorney General of the United States hereby submits the following Statement of Undisputed Facts and Conclusions of Law in support of his Motion for Summary Judgment, pursuant to L.R. 56-1 and this Court's Standing Order.

## I.   DEFENDANT'S REPLY IN SUPPORT OF HIS UNDISPUTED FACTS

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| **1.** | On February 18, 2020, Plaintiff complained to Acting Warden ("AW") James Engelman regarding content on the Page. [Engleman Decl. ¶ 3] | Disputed.  Plaintiff did not complain to Engleman about "content on the Page." Rather, Plaintiff told him: "this Instagram page that is inappropriate, it's racist, it's sexist, it's homophobic. There's some material on that page that could pose a significant public relations issue for the prison and the BOP as a whole if somebody from the public were to see the page. There are, you know, posts that are targeting specific departments. And that was the most significant parts of our conversation." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 27:16-25. | Plaintiff does not controvert this fact, instead, she improperly attempts to add additional facts here. |
| **2.** | At the time of Plaintiff's meeting with AW Engleman, Plaintiff did not know nor identify the author of the Page. [Engleman Decl. ¶ 3]. | Undisputed but immaterial. | Fact is material to Plaintiff's inability to identify actionable *workplace* conduct. |
| **3.** | On February 18, 2020, AW Engleman instructed Special Investigative Agent ("SIA") Victor Gonzales to investigate | Disputed. *See* Plaintiff's Objections to Evidence. | Plaintiff's Objections to Evidence do not address this fact, thus, it is uncontroverted. |

1

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | Plaintiff's complaints. | | |
| **4.** | On February 18, 2020, Plaintiff's immediate supervisor, Chief Psychologist Dr. Carl Clegg re-assigned her, with her consent, from FCC Lompoc's Medium Facility to the Low Facility because she believed that staff working in Special Housing Unit ("SHU") likely made the memes on the Page. | Disputed. *See* Plaintiff's Objections to Evidence. | Plaintiff does not controvert this fact, instead, she merely objects on hearsay grounds. |
| **5.** | On February 18, 2020, Plaintiff again visited the Page, viewing a meme containing a picture of former Speaker Nancy Pelosi tearing the State of the Union of Address in half, captioned with "When you get butthurt by memes," "Tomorrow's forecast? Hot enough to melt a snowflake #youcantakeadickbutnotajoke." [Varshovi Decl. ¶ 2, Ex. A-1 (Pl.'s Dep. 100:12-100:13); *id.* ¶ 3, Ex. B-1 (copy of Speaker Pelosi meme)] | Undisputed. | |
| **6.** | Plaintiff admitted that this meme was never sent to her, never displayed in the | Disputed. While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace. | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | workplace, never shown to her in the workplace, and never discussed with her without her consent. [Varshovi Decl. ¶ 2, Ex. A-1 (Pl.'s Dep. 100:14-101:5)] | namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. Plaintiff explained that the post targeted her because two hours before the post was made, she had conversations at work with Grice, Engleman, and the chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those | additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1. Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9. Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20. Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A. | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | Okonowsky Depo. 106:21-107:21.  Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | E, at 2.  Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E. | |
| 7. | On February 19, 2020, at 7:07 AM, Plaintiff e-mailed the meme to AW Engleman, writing in relevant part, "I think the most recent post I sent you may warrant another conversation.  If you have time today, please give me a call . . ."  [Engleman Decl. ¶ 5, Ex. A] | Undisputed. | |
| 8. | On February 19, 2020, at 7:50 AM, AW Engelman forwarded Plaintiff's e-mail to SIA Gonzales. [Engleman Decl. ¶ 5, Ex. A]. | Undisputed. | |
| 9. | On February 19, 2020, SIA Gonzales called Plaintiff to schedule a meeting to discuss her complaints. [Engleman Decl. ¶ 6] | Disputed. *See* Plaintiff's Objections to Evidence. | Plaintiff does not controvert this fact, instead, she objects on numerous grounds offering no explanation as to how those objections apply to this fact. |

6

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| **10.** | On February 26, 2020, SIA Gonzalez met with Plaintiff to discuss her complaints regarding the Page.  [Engleman Decl. ¶ 7] | Disputed.  *See* Plaintiff's Objections to Evidence. | Plaintiff does not controvert this fact, instead, she objects on numerous grounds offering no explanation as to how those objections apply to this fact. |
| **11.** | On March 7, 2020, at 12:46 PM, Plaintiff e-mailed AW Engleman, attaching a meme from the Page, writing in relevant part "This is completely inappropriate and is setting the tone for a strikingly hostile work environment." [Engleman Decl. ¶ 8, Ex. B, at 1-2]. | Undisputed. | |
| **12.** | The meme, attached to Plaintiff's March 7, 2020 e-mail, which Plaintiff viewed by visiting the Instagram page, captioned a picture of a woman holding a milkshake, with "Feeling cute, might put on a watch later," and "If psychology had to cover the morning watch shifts all weekend, nobody'd [sic] ever go on watch #changemymind." [Engleman Decl. ¶ 8, Ex. B, at 2; Varshovi Decl. ¶ 2, Ex. A-2 (Pl.'s | Disputed. The cited evidence does not provide *any* description of this meme. Plaintiff described the meme much differently: "it absolutely targets me" because right before it was posted, Lt. Hellman blocked her from the page and she believed "the woman in the photo is kind of like, you know, it exaggerated likeness to some degree." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 102:10-12; 103:2-25. | Plaintiff does not controvert this fact. She yet again improperly attempts to add additional facts.  Exhibit B to AW Engelman's Declaration contains a screenshot of the meme Plaintiff herself attached to her e-mail. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | Dep. 102:10-102:12)]. | | |
| **13.** | Plaintiff asserted that the meme "is derogatory toward women, is critical of women's (specifically my) bodies"), and diminishes the role of Psychology Services . . . and challenges the competency of the Psychology Services department." [Varshovi Decl. ¶ 3, Ex. B-2] | The cited evidence does not provide *any* description of this meme. Plaintiff described the meme much differently saying: "it absolutely targets me" because right before it was posted, Lt. Hellman blocked her from the page and she believed "the woman in the photo is kind of like, you know, it exaggerated likeness to some degree." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 102:10-12; 103:2-25. | Plaintiff does not controvert this fact. She yet again improperly attempts to add additional facts. Exhibit B-2 contains a screenshot of the meme Plaintiff herself took of the meme, as well as her own description. |
| **14.** | Plaintiff admitted that this meme was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. | Disputed. While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. Plaintiff explained that the post targeted her because two hours before the post was made, she had conversations at work with Grice, Engleman, and the chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

8

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1. Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9. Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20. Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | work. Okonowsky Decl. ¶ 33. Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.  Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.  Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E. | |
| **15.** | Even after Plaintiff was blocked from viewing the Page that day by its creator, she | Disputed.  Plaintiff was told "of course, let [the investigators] know" if the offensive posting "continues to happen." She explained: | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous |

11

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | nevertheless created a fake Instagram account to continue viewing it on a daily basis as she had since February 18, 2020. [Varshovi Decl. ¶ 4, Ex. C, at 3; Varshovi Decl. ¶ 2, Ex. A-2 (Pl.'s Dep. 103:10-103:11)] | "So I was really between a rock and a hard place. I was being advised not to look at the page, but then they also told me that they didn't have the resources to monitor the page but to tell them if it kept happening.  Right? So I was kind of like -- that's all I could say, I was between a rock and a hard place. Like I felt…nobody was communicating that they were going to protect me or do any kind of monitoring, and so again, I felt I was on my own and -- and had to take care of myself." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 60:1-20. | additional facts here. |
| **16.** | On March 9, 2020, at 7:52 AM, AW Engleman forwarded Plaintiff's e-mail to SIA Gonzales. [Engleman Decl. ¶ 8, Ex. B, at 1.] | Undisputed. | |
| **17.** | On March 9, 2020, AW Engleman directed SIA Gonzales to refer Plaintiff's complaints regarding the Page to the BOP's Office of Internal Affairs, in addition to the ongoing FCC Lompoc investigation. [Engleman Decl. ¶ 9] | Undisputed. | |
| **18.** | On March 11, 2020, Plaintiff sent AW Gutierrez a 48-page memo regarding the | Disputed. Plaintiff did not send "a 48-page memo regarding the Page." Rather, on March 11, 2020, Okonowsky | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | Page. [Engleman Decl. ¶ 10]. | submitted a 48-page memo to Associate Warden Gutierrez detailing the harassing memes that continued to be posted by Hellman and detailing why each meme was offensive and harassing. At this time, the page had over 570 posts and Okonowsky's 48-pages memo contained over 30 examples of sexist and harassing posts from the page including those that specifically targeted her and other employees at FCC Lompoc. Okonowsky Decl. ¶ 25, Exh. 1. | additional facts here. |
| 19. | Plaintiff asserted that, in addition to the meme picturing Nancy Pelosi, the following memes, which she viewed by visiting the Page, were targeted at her: (1) a picture of "stay in your lane" traffic sign, captioned with "When Psychology tries to tell you where you can n [sic] can't cell somebody"; (2) a picture of a cartoon character appearing sad, captioned with "when psychology doesn't get their way"; (3) a picture of a woman wearing a sweater stating "the struggle is real," captioned with "When you piss of the SHU crew, and now you have to pull your own inmates" and "Don't bite the hand that feeds you"; and (4) an undated picture of a man's face, preceded by | Disputed. There is no foundation as to any "assertion" by Plaintiff. The cited evidence merely states: "Exhibit B- 1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact. Also, see Plaintiff's Objections to Evidence. | Plaintiff does not controvert this fact. She yet again improperly objects. Exhibits B-3, B-4, B-5, and B-6 all of which are from Plaintiff's own production (each contain her own bates stamp), were authenticated by Plaintiff in her deposition, and contain a screenshot of memes Plaintiff herself took, as well as her own descriptions of the same. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | a caption stating "When a female co-worker invites guys only for an 'End of Quarter' Party" and followed by the caption: "I'm here for the gang bang." [Varshovi Decl. ¶ 3, Ex. B-3 (copy of stay in your lane meme); Ex. B-4 (copy of meme of cartoon character); Ex. B-5 (copy of meme of a woman with "struggle is real" sweater); Ex. B-6 (copy of meme of man's face)] | | |
| 20. | Regarding the meme of "stay in your lane" traffic sign, Plaintiff asserted "This post clearly highlights a lack of respect for psychology services." Varshovi Decl. ¶ 3, Ex. B-3. | Disputed. There is no foundation as to any "assertion" by Plaintiff. The cited evidence merely states: "Exhibit B-1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact. Also, *see* Plaintiff's Objections to Evidence. | Plaintiff does not controvert this fact. She yet again improperly objects. Exhibit B-3 is from Plaintiff's own production (each contain her own bates stamp), were authenticated by Plaintiff in her deposition, and contain a screenshot of a meme Plaintiff herself took, as well as her own description of the same. |
| 21. | Plaintiff admitted the meme of the "stay in your lane" traffic sign was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. Varshovi Decl. | Disputed. The cited evidence does not provide any description of this meme. While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

14

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
|  | ¶ 2, Ex. A-3 (Pl.'s Dep. 104:16-105:6) | Okonowsky Decl. ¶¶ 4, 8. Plaintiff explained that the post targeted her because two hours before the post was made, she had conversations at work with Grice, Engleman, and the chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1. Those offensive memes |  |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9. Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20. Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21.  Plaintiff further explained that she felt unsafe at work because of | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.  Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti Harassment Policy. Engleman Decl. ¶ 17, Exh. E | |
| 22. | Regarding the meme of a cartoon character appearing sad, Plaintiff asserted that "During a SHU training earlier this year, SHU staff were argumentative regarding their job role of removing inmates from their cells for appointments with Psychology Services. . . . the staff member 'got his way' and me, as 'Psychology,' did not." Varshovi Decl. ¶ 3, Ex. B-4 | Disputed. There is no foundation as to any "assertion" by Plaintiff. The cited evidence merely states: "Exhibit B- 1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact. Also, see Plaintiff's Objections to Evidence. | Plaintiff does not controvert this fact. She yet again improperly objects. Exhibit B-3 is from Plaintiff's own production (each contain her own bates stamp), were authenticated by Plaintiff in her deposition, and contain a screenshot of a meme Plaintiff herself took, as well as her own description of the same. |
| 23. | Plaintiff admitted that the meme of a cartoon character appearing sad was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. Varshovi Decl. ¶ 2, Ex. A-4 (Pl.'s Dep. 106:6-106:23) | Disputed. The cited evidence does not provide any description of this meme. While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. Plaintiff explained that the post targeted her because two hours before the post was made, she had conversations at work with Grice, Engleman, and the | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1. Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9. Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | page. Okonowsky Decl. ¶ 20. Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21. Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.  Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti- | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | Harassment Policy. Engleman Decl. ¶ 17, Exh. E | |
| 24. | Regarding the meme of a woman wearing a sweater stating "the struggle is real," Plaintiff asserted that "I believe these posts targeted me as the former SHU psychologist. . . . I believe the posts also reflect Mr. Hellman's pattern of critiquing my physical appearance." Varshovi Decl. ¶ 3, Ex. B-5 | Disputed. There is no foundation as to any "assertion" by Plaintiff. The cited evidence merely states: "Exhibit B-1 through B-6 are a true and correct copies of documents produced to me or by me in discovery." Defendant's evidence fails to support this fact. | Plaintiff does not controvert this fact. She yet again improperly objects. Exhibit B-4 is from Plaintiff's own production (each contain her own bates stamp), were authenticated by Plaintiff in her deposition, and contain a screenshot of a meme Plaintiff herself took, as well as her own description of the same. |
| 25. | Plaintiff admitted that the meme of a woman wearing a sweater stating "the struggle is real," was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. Varshovi Decl. ¶ 2, Ex. A-5 (Pl.'s Dep. 116:15-117:7) | Disputed.  The cited evidence does not provide *any* description of this meme. While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. Plaintiff explained that the post targeted her because two hours before the post was made, she had conversations at work with Grice, Engleman, and the chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. Based on the creator's high-level position, the subject matter of the page, | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1. Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9. Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20. Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21. Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.  Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E | |
| 26. | Plaintiff admitted that the meme of a man's face was never sent to | The cited evidence does not provide any description of this meme.  While it's true | Plaintiff does not controvert this fact, instead, she |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent. Varshovi Decl. ¶ 2, Ex. A-6 (Pl.'s Dep. 109:2-109:17) | that the meme was not shown to her in her physical workplace was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. Plaintiff explained that the post targeted her because two hours before the post was made, she had conversations at work with Grice, Engleman, and the chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc | improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | employee Instagram page. Okonowsky Decl. ¶ 8. Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1. Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9. Plaintiff's heard conversations at work among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20. Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21. Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. On April 16, 2020, the Threat Assessment Team issued a | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | report and determined that Lt. Hellman *"unconvincingly"* denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.  Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E | |
| 27. | On March 11, 2020, at 3:41 PM, Plaintiff e-mailed AW Engelman a copy of her memo.  At 7:47 AM, AW Engleman forwarded Plaintiff's memo to SIA Gonzales.  Engleman Decl. ¶ 10, Ex. C | Undisputed | |
| 28. | Also on March 11, 2020, AW Engelman directed SIA Gonzales to provide Ms. Okonowsky's memo to OIA in connection with the original referral submitted on March 9, 2020.  Engleman Decl. ¶ 11 | Undisputed | |
| 29. | On March 11, 2020, as a result of Plaintiff's allegation in her memo | Disputed. Plaintiff continued to see the Page's creator Lt. Hellman at work. Bowden Decl. ¶ 2, Exh. A, | Plaintiff does not controvert this fact, instead, she improperly attempts |

29

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | as to the identity of the Page's creator that individual was assigned to a different facility at FCC Lompoc while her complaints were investigated.  Engleman Decl. ¶ 12. | Okonowsky Depo. 36:25-38:2, 39:18-23. On March 9, 2020, Plaintiff was required to work in the Receiving and Discharge department along with Lt. Hellman. Okonowsky. Decl. ¶ 24. | to add numerous additional facts here. |
| 30. | On March 13, 2020, Dr. Clegg referred Plaintiff to the Employment Assistance Program ("EAP"), which provides free, voluntary counseling to employees.  Clegg Decl. ¶ 5, Ex. B | Disputed. Clegg referred Plaintiff to the Employment Assistance Program ("EAP") as it offers "confidential counseling to BOP employees **to help them address concerns that may negatively impact job performance** and overall wellbeing." Engelman Decl., ¶ 19 (emphasis added). | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |
| 31. | On March 27, 2020, at 9:32 PM, Plaintiff e-mailed AW Engleman, attaching a meme she viewed on the Page, asserting "It is obvious these posts are targeted toward me.  Is anything going to be done to curb this behavior as the investigation takes place?  I shouldn't have to work in an environment with people who refer to me as a [c***] on a public forum."  The next day, at 11:50 AM, AW Engelman forwarded Plaintiff's e-mail to SIA Gonzales.  Engleman Decl. ¶ 13, Ex. D, at 1; | Undisputed | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | Varshovi Decl. ¶ 2, Ex. A-7 (121:8-122:9) | | |
| 32. | The meme had the caption "The one staff member that's a giant [c***], loves inmates, and relentlessly tells on staff," with a colon before a picture of "United States Penitentiary Big Sandy, Kentucky," in which "Big Sandy" is underlined in red, with a second caption beneath stating "You know, on account of their vaganga [sic]." Engleman Decl. ¶ 13, Ex. D, at 2 | Disputed.  The cited evidence does not provide any description of this meme. Rather, Plaintiff described this meme as "bullying and harassment." Engleman Decl. ¶ 13, Ex. D, at 1; Varshovi Decl. ¶ 2, Ex. A-7 (121:8-122:9) | Plaintiff does not controvert this fact. She yet again improperly attempts to add additional facts.  Exhibit D to AW Engelman's Declaration contains a screenshot of the meme Plaintiff herself attached to her e-mail. |
| 33. | Plaintiff admitted that this meme was never sent to her, never displayed in the workplace, never shown to her in the workplace, and never discussed with her without her consent.  Varshovi Decl. ¶ 2, Ex. A-7 (121:10-122:5) | Disputed.  Plaintiff explained, "All of the people on the next page that liked the post are Lompoc employees. So whether it's displayed or not, it's something that permeated the workplace. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 121:16-23. While it's true that the meme was not shown to her in her physical workplace, it was displayed in her extended workplace, namely an unofficial FCC Lompoc Instagram page entitled "8_and_hitthe_gate." Okonowsky Decl. ¶¶ 4, 8. Plaintiff explained that the post targeted her because two hours before the post was made, she had | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | conversations at work with Grice, Engleman, and the chief psychologist where she reported the page. Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 101:12-25. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. Okonowsky Decl. ¶ 6. The prison and working conditions were regularly discussed as well as work meetings and events. Okonowsky Decl. ¶¶ 6-7, 26. Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Plaintiff determined that this was an unofficial FCC Lompoc employee Instagram page. Okonowsky Decl. ¶ 8. Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. Okonowsky Decl. ¶¶ 6, 25, Exh. 1. Those offensive memes would often get "liked" and commented on by the other employees. Okonowsky Decl. ¶¶ 7, 9. Plaintiff's heard conversations at work | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | among co-workers discussing Lt. Hellman's page. Okonowsky Decl. ¶ 20. Plaintiff explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. Plaintiff explained while the posts were not necessarily shown to her in the workplace, they were nevertheless connected to the workplace: "this line of questioning about these posts and whether it was shown to me in the workplace or not really captures, you know, the situation. Like with this post in particular, there was a comment from an employee referencing a meeting that did happen in the workplace. So this is kind of what I'm referencing with that kind of bidirectional relationship with the workplace and the Instagram page. It was a page created by a Lompoc employee for Lompoc employees where Lompoc matters were discussed. So I just think that's important." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 106:21-107:21. Plaintiff further explained that she felt unsafe at work because of Lt. Hellman's posts: "If there is going to be content on that page that's about me, juxtaposed with a previous meme about tomorrow's | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | forecast hot enough to melt a snowflake. Right? I felt that I needed to know what was going on on that page to -- to potentially protect myself from a heated situation. If everybody in the institution knows and not me, that's potentially an unsafe situation because we rely on each other as coworkers, especially in a prison environment. Right? So if there are things circulating on this page that are about me that are, you know, characterizing me in a problematic manner. Right? And I potentially have an emergency in the institution and it's -- it's these employees who engage with this page who are going to be responding to the emergency, I have to rely on them. And so I felt like I needed to know what was going on on that page to --to -- I needed to be well informed." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 70:18-71:16. On April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. Engleman Decl. ¶ 17, Exh. E, at 2.  Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' | |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E | |
| **34.** | In early April 2020, Barbara Von Blanckensee was assigned as Warden at FCC Lompoc. Engleman Decl. ¶ 14 | Undisputed | |
| **35.** | Shortly thereafter, Warden Von Blanckensee was assigned as Warden, AW Engleman apprised her of Plaintiff's complaints regarding the Page and the ongoing investigation into the same. Engleman Decl. ¶ 15 | Undisputed | |
| **36.** | On April 13, 2020, Warden Von Blanckensee convened a six-member Threat Assessment Team to review Plaintiff's concerns regarding the Page. Engleman Decl. ¶ 16 | Undisputed | |
| **37.** | On April 13, 2020, the Team reviewed Plaintiff's March 11, 2020 memo and interviewed her in-person. Engleman | Disputed. Plaintiff "sat down with a group of people and they asked [her] questions and -- yeah." Plaintiff was told that that he "wouldn't want to fight this case, which [she] | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | Decl. ¶ 17, Ex. E, at 2. | thought was striking and stuck with [her] and kind of validated some of [her] concerns." Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 131:3- 13; 132:7-13. | |
| 38. | During her April 13, 2020, Plaintiff stated that she had "no personal or direct knowledge" as to who ran the Page and that the offending conduct occurred exclusively online.  Engleman Decl. ¶ 17, Ex. E, at 2. | Disputed.  During the meeting, Plaintiff did not state that she had "no personal or direct knowledge as to who ran the page and that the offending conduct occurred exclusively online." She would not have said that because it is not true. She was told prior to this meeting that Lt. Hellman was operating the page so she would not have said she did not know. Also, she. did not ever believe that the harassment occurred "exclusively online." As she explained to the investigators, she felt the harassment not only occurred on the page but bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. Okonowsky Decl. ¶ 33. | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. And her Declaration contradicts her sworn testimony:

Plaintiff admitted in her deposition that she did not have direct or personal knowledge as to who ran the Page.  *See* Pl.'s Dep. 133:7-12 ("I didn't have confirmed knowledge . . . But I had knowledge through other parties that he was running the page. . . . but it hadn't been confirmed to me.").

Plaintiff further admitted that the entirety of the harassment occurred exclusively online. Indeed, when asked if the following statement was consistent with her recollection of what she said to the Threat Assessment, specifically "She stated that Hellman has not spoken to her in person, and |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | | reiterated as detailed in her memorandum, that his offensive actions towards her and others all occur online," Plaintiff testified "Yeah, and it's consistent with what I've been saying today." Pl. Dep.'s 134:5-134:12. |
| 39. | On April 15, 2020, the Team interviewed the Page's creator in-person upon his return from previously scheduled leave. Engleman Decl. ¶ 17, Ex. E, at 2. | Undisputed | |
| 40. | The Page's creator, a correctional officer, admitted that he was the Page's owner and sole contributor, and that the "account was just a joke, 'dark prison humor,' and a way for him to blow off steam." Engleman Decl. ¶ 17, Ex. E, at 2. | Disputed.  On April 16, 2020, the Threat Assessment Team issued a report and determined that Hellman "unconvincingly" denied that the memes were directed at Okonowsky. Engleman Decl. ¶ 17, Exh. E. Additionally, Threat Assessment Team determined that "Hellman's actions towards Plaintiff (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within this 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E. On April 16, 2020, Defendant also issued Lt. Hellman a referral to the Employee Assistance Program. Engleman Decl. ¶ 19. Even after Lt. Hellman was issued a cease-and- | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | desist letter on April 16, 2020, almost two months after Plaintiff's initial complaints, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and one mocking the workplace violence committee. | |
| 41. | But the Page's creator denied that any of his memes were directed at Plaintiff and that he never intended to offend her nor anyone else. Engleman Decl. ¶ 17, Ex. E, at 2. | Disputed. On April 16, 2020, the Threat Assessment Team issued a report and determined that Hellman "unconvincingly" denied that the memes were directed at Okonowsky. Engleman Decl. ¶ 17, Exh. E. Additionally, Threat Assessment Team determined that "Hellman's actions towards Plaintiff (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within this 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E. | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |
| 42. | On April 16, 2020, the Team issued a memo to Warden Von Blanckensee, concluding that Plaintiff "did not suffer physical harm or damage to her property, nor was she exposed to potential danger or harm as a result of" the Page's creator actions. Engleman Decl. ¶ 17, | Undisputed. | |

38

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | Ex. E, at 3. | | |
| 43. | But because the Team found Page's creator actions towards Plaintiff, specifically "posting of several memes that reasonably appear to have been directed solely at her," could constitute bullying, the Team recommended that Page's creator be a Cease-and-Desist Order and that he and Plaintiff should continue to remain in separate complexes. Engleman Decl. ¶ 17, Ex. E, at 4-5 | Disputed. On April 16, 2020, the Threat Assessment Team issued a report and determined that Hellman "unconvincingly" denied that the memes were directed at Plaintiff. Additionally, Threat Assessment Team determined that "Hellman's actions towards Plaintiff (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within this 'bullying' language/definition" from Defendant's Anti-Harassment Policy. Engleman Decl. ¶ 17, Exh. E, at 2-4. The Threat Assessment Team also made several recommendations to the Agency including referring Hellman to the Office of Internal Affairs for possible policy violations; issuing a cease-and-desist letter from posting on social media any memes/information which violates Agency policy; and a referral to the Employee Assistance Program. Engleman Decl. ¶ 17, Exh. E, at 4-5. On April 16, 2020, Defendant also issued Lt. Hellman a referral to the Employee Assistance Program. Engleman Decl. ¶ 19. | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |
| 44. | On April 16, 2020, following the Threat Assessment Team's recommendations, a Cease-and-Desist Order | Disputed. This Cease-and-Desist Order reminded Lt. Hellman that as a "supervisor" he is held to a higher standard of conduct. Bowden Decl. ¶ 5, Exh. D, | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | was issued to the Page's creator, which ordered the Page's creator to cease and desist posting content on social media in violation of BOP policy, including content that could reasonably be deemed harassing or bullying of another employee. Engleman Decl. ¶ 18 | However, after Lt. Hellman was issued a cease-and-desist letter on April 16, 2020, almost two months after Plaintiff's initial complaints, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and one mocking the workplace violence committee process. Okonowsky Decl. ¶ 34, Exhs. 4-5. | |
| 45. | Also on April 16, 2020, following the Threat Assessment Team's recommendations, a referral to the Employee Assistance Program was issued to the Page's creator, which offers free, voluntary confidential counseling to BOP employees to help them address concerns that may negatively impact job performance and overall well-being.  Engleman Decl. ¶ 19 | Undisputed. | |
| 46. | Subsequently, Plaintiff complained of new memes she found offensive, none of which she alleged were directed at her.  Pl.'s Compl. ¶ 25 | Disputed.  The cited evidence does not support this fact. The cited evidence merely states: "Following the Threat Assessment Report on April 16, 2020, almost two months after Plaintiff's initial complaints, Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services." | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | There is no indication that Plaintiff complained about them or whether any were directed towards her. Pl.'s Compl. ¶ 25. Even after the Threat Assessment Team was convened, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and at least one mocking the workplace violence committee meeting process, which Okonowsky took as ridiculing her. Okonowsky submitted several additional memorandums to Defendant detailing the continued posts including one on April 27, 2020 and another on May 12, 2020. Okonowsky Decl. ¶ 34, Exhs. 4-5. Plaintiff also explained that when Hellman continued to post memes after the workplace violence committee meeting she was scared because he was "flaunting his disregard for that meeting" and "didn't take it seriously and he didn't stop posting at that point." Bowden Decl. ¶ 2, Exh. A. Okonowsky Depo. 127:14-128:11 | |
| 47. | On May 12, 2020, the Page's creator deleted the Page entirely.  Pl.'s Compl. ¶ 26 | The cited evidence does not support this fact. The cited evidence merely states: "Plaintiff initially complained about Instagram page on February 18, 2020; however, the page was not taken down until after May 12, 2020." There is no indication that Hellman was the one who "deleted" the entire page or any portion of it. Also, the cited evidence | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |

| Def.'s SUF No. | Undisputed Facts | Pl.'s Response | Def.'s Reply |
|---|---|---|---|
| | | states that the page was "taken down" – not "deleted." Pl.'s Compl. ¶ 26. | |
| 48. | Following the deletion of the Page, Plaintiff made no further complaints and remained a BOP employee for over two years.  Varshovi Decl. ¶ A, Ex. A-8 (Pl.'s Dep. 92:8-92:12); Pl.'s Compl. ¶ 26 | Disputed. The cited evidence does not support this fact. The cited evidence merely states: "Plaintiff initially complained about Instagram page on February 18, 2020; however, the page was not taken down until after May 12, 2020." The cited evidence states that the page was "taken down" – not "deleted." Pl.'s Compl. ¶ 26 | Plaintiff does not controvert this fact, instead, she improperly attempts to add numerous additional facts here. |
| 49. | Plaintiff continued to receive retention bonuses.  Varshovi Decl. ¶ 2, Ex. A-8 (Pl.'s Dep. 87:13-87:16) | Undisputed but immaterial. | Material to Plaintiff's failure to demonstrate any actionable harassment in the workplace. |
| 50. | On January 24, 2021, she was promoted to a new position at Federal Correctional Institute Seagoville, Texas, which she received along with a pay raise. Varshovi Decl. ¶ 2, Ex. A-8 (Pl.'s Dep. 91:13-91:25) | Undisputed but immaterial. | Material to Plaintiff's failure to demonstrate any actionable harassment in the workplace. |
| 51. | In July of 2022, Plaintiff resigned from the Bureau of Prisons. Varshovi Decl. ¶ 2, Ex. A-8 (Pl.'s Dep. 90:21) | Undisputed but immaterial. | Material to Plaintiff's failure to demonstrate any actionable harassment in the workplace. |

Defendant Merrick Garland in his official capacity as Attorney General of the United States hereby submits its Response to Plaintiff's Statement of Facts.

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| 1. | Lindsay Okonowsky, Ph.D., a 35-year-old female, began working as a GS-12 Staff Psychologist at FCC Lompoc on September 17, 2018. | Okonowsky Decl. ¶ 2 | Undisputed. |
| 2. | She was never disciplined and received consistent positive reviews and feedback. | Okonowsky Decl. ¶ 3 | Undisputed. |
| 3. | As a Staff Psychologist, Dr. Okonowsky completed intakes, protective custody reviews, sexual abuse interventions, responded to spontaneous mental health demands/crises, and facilitated group and individual treatment for patients with serious mental illnesses, among other duties. | Okonowsky Decl. ¶ 3 | Undisputed. |
| 4. | On February 16, 2020, Dr. Okonowsky became aware of the Instagram page 8_and_hitthe_gate when the page came up on her personal Instagram as a suggested page she should follow. | Okonowsky Decl. ¶ 4 | Undisputed. |
| 5. | Lieutenant Steven Hellman created and ran the Instagram page 8_and_hitthe_gate. | Okonowsky Decl. ¶ 4; Engleman Decl. ¶ 17, Ex. E, at 2; Bowden Decl. ¶ 4, Ex. | Undisputed. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | | C, Hellman EEO Decl. at 4. | |
| **6.** | Lt. Hellman was a supervisor at FCC Lompoc and worked with Dr. Okonowsky. | Okonowsky Decl. ¶ 5; Bowden Decl. ¶ 5, Ex. D. | Disputed. Plaintiff has put forward no evidence establishing that the Page's creator was a supervisor for purposes of Title VII. Further the cited paragraph of Plaintiff's declaration does not assert she worked with the Page's creator. |
| **7.** | As a Lieutenant, Lt. Hellman had the authority to supervise the custody staff and oversee operations. | Okonowsky Decl. ¶ 5 | Disputed. Plaintiff has put forward no evidence establishing that the Page's creator was a supervisor for purposes of Title VII. |
| **8.** | Lt. Hellman was also responsible for overseeing the facility, had several direct reports, and was a member of the Special Investigative Services ("SIS"). | Okonowsky Decl. ¶ 5 | Disputed. Plaintiff has put forward no evidence establishing that the Page's creator was a supervisor for purposes of Title VII. |
| **9.** | As an SIS Lieutenant, Lt. Hellman was also responsible for investigating suspected violations of the law and prison rules and policies by both inmates and staff. | Okonowsky Decl. ¶ 5 | Disputed. Plaintiff has put forward no evidence establishing that the Page's creator was a supervisor for purposes of Title VII. |
| **10.** | Followers of Lt. Hellman's page were made up of hundreds of FCC Lompoc employees, including the Human Resources Manager and Union President. | Okonowsky Decl. ¶ 6 | Disputed. Plaintiff's Declaration does not identify "hundreds of FCC Lompoc employees," instead she identifies four employees. |
| **11.** | The prison and working conditions were regularly | Okonowsky Decl. ¶¶ 6-7, 26. | Disputed. Plaintiff cites two memes neither of which support her assertion that such topics |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | discussed as well as work meetings and events. | | were "regularly discussed." |
| **12.** | For example, Lt. Hellman posted a meme of Jefferey Epstein on Valentine's Day and dedicated it to the "The SHU Crew" (aka the Special Housing Unit) at FCC Lompoc and around that time, Dr. Okonowsky heard the officers in the SHU Department talking about how funny they thought the post was. | Okonowsky Decl. ¶ 7 | Undisputed. |
| **13.** | Based on the creator's high-level position, the subject matter of the page, and the makeup of its followers, Dr. Okonowsky determined that this was an unofficial FCC Lompoc employee Instagram page. | Okonowsky Decl. ¶ 8 | Undisputed that Plaintiff was offended by the meme.  Disputed that the memes were harassing.  As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **14.** | Unfortunately, Lt. Hellman often posted offensive memes that referenced work, including those that were sexist, racist, and homophobic. | Okonowsky Decl. ¶ 6 | Undisputed that Plaintiff was offended by the meme.  Disputed that the memes were harassing.  As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| **15.** | Those offensive memes would often get "liked" and commented on by the other employees. | Okonowsky Decl. ¶¶ 7, 9 | Undisputed that Plaintiff was offended by the meme. Disputed that the memes were harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **16.** | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Ex. 1, at 32. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **17.** | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Ex. 1, at 31. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page, including this one, were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |

46

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| **18.** | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Ex. 1, at 39. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **19.** | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 34, Ex. 5, at 3. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **20.** | Dr. Okonowsky complained of several harassing memes, including: | Okonowsky Decl. ¶ 25, Ex. 1, at 32. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |

47

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | 2 likes<br>8_and_hitthe_gate The Walk of Shame | | |
| **21.** | Dr. Okonowsky complained of several harassing memes, including:<br> | Okonowsky Decl. ¶ 25, Ex. 1, at 46. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **22.** | Dr. Okonowsky complained of several harassing memes, including:<br> | Okonowsky Decl. ¶ 25, Ex. 1, at 33. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **23.** | Dr. Okonowsky complained of several harassing memes, including: | Okonowsky Decl. ¶ 34, Ex. 4, at 6. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| |  | | SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 24. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 34, Ex. 4, at 5. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 25. | Dr. Okonowsky complained of several harassing memes, including: | Okonowsky Decl. ¶ 34, Ex. 5, at 10. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 26. | Dr. Okonowsky complained of several harassing memes, including: | Okonowsky Decl. ¶ 34, Ex. 4, at 3. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the |

49

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| |  | | workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 27. | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Ex. 1, at 22. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 28. | Dr. Okonowsky was shocked at the content, especially since Lt. Hellman was a supervisor and Lieutenant at her workplace | Okonowsky Decl. ¶ 9. | Undisputed that Plaintiff was offended by the content of the Page. Disputed that the content of the Page was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| 29. | As a woman, she was especially offended at the sexist memes that were overtly demeaning and derogatory. | Okonowsky Decl. ¶ 9. | Undisputed that Plaintiff was offended by the content of the Page. Disputed that the content of the Page was harassing. As Plaintiff |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | | | admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **30.** | Dr. Okonowsky considered Lt. Hellman a high-level leader, and the co-worker "likes," and comments caused her concern | Okonowsky Decl. ¶ 9. | Undisputed that Plaintiff was offended by the content of the Page. Disputed that the content of the Page was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **31.** | She also believed that his page violated FCC Lompoc policy | Okonowsky Decl. ¶¶ 9, 25, Ex. 1. | Disputed.  Plaintiff does not identify what policy she refers to. |
| **32.** | On February 17, 2020, the day after she found the Instagram page, Dr. Okonowsky reported the page to two supervisors, including her immediate supervisor, Dr. Carl Clegg and Drug Abuse Program Coordinator, Dr. Anne Clemmer | Okonowsky Decl. ¶ 10. Bowden Decl. ¶ 2, Ex. A, Okonowsky Depo. 25:21-26:11. | Disputed.  Plaintiff has put forward no evidence that Dr. Clemmer was her supervisor.  Plaintiff has only asserted that Dr. Clegg was her supervisor.  Okonowsky Decl. ¶ 3. |
| **33.** | On February 18, 2020, Dr. Okonowsky complained to | Okonowsky Decl. ¶ 11. | Undisputed. |

51

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | Safety Manager Robert Grice about the page. | | |
| 34. | Grice was one of many employees that regularly liked and commented on the memes. | Okonowsky Decl. ¶ 11. | Disputed. Plaintiff does not show any evidence that Grice "regularly" liked nor "commented" on the memes. |
| 35. | He said he thought the posts were "funny" and told her, "Sorry, not sorry" and told her to get thicker skin. | Okonowsky Decl. ¶ 11. | Undisputed. |
| 36. | Dr. Okonowsky was shocked. | Okonowsky Decl. ¶ 11. | Disputed. Plaintiff testified that she had "a disagreement about the appropriateness of the page," (Pl.'s Dep. Tr. 35:14-15) she never asserted she was "shocked." |
| 37. | Later that day, Dr. Okonowsky saw a meme of Nancy Pelosi ripping up President Trump's State of the Union address on Lt. Hellman's page, with captions that said, "*When you get butthurt by memes*" and "*Tomorrow's forecast: hot enough to melt a snowflake*" and the hashtag, *#youcantakeadickbutnotajoke*. | Okonowsky Decl. ¶ 12. | Undisputed. |
| 38. | Dr. Okonowsky felt the meme was in response to her complaint just hours earlier. | Okonowsky Decl. ¶ 12. | Undisputed. |
| 39. | She did not feel safe at work | Okonowsky Decl. ¶ 12. Bowden Decl. ¶ 2, Exh. | Undisputed. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | | A, Okonowsky Depo. 70:18-71:16. | |
| 40. | On February 18, 2020, Dr. Okonowsky spoke with Acting Warden James Engleman about the page and the offensive posts. | Okonowsky Decl. ¶ 13. | Undisputed. |
| 41. | Engleman said he would have SIA Victor Gonzales, who was Lt. Hellman's supervisor, submit a referral to the Office of Internal Affairs. | Okonowsky Decl. ¶ 13. | Disputed. Engelman did not on February 18, 2020, inform Plaintiff that he would direct SIA Gonzales to submit a referral to the Office of Internal Affairs. ¶ 13. |
| 42. | Dr. Okonowsky met with Gonzales and shared some of the printed memes. | Okonowsky Decl. ¶ 14. | Undisputed. |
| 43. | Gonzales told her words to the effect of: "*I looked at the page and I don't really see anything that's a problem.*" | Okonowsky Decl. ¶ 14. | Undisputed. |
| 44. | Despite many of the memes being obviously sexist, he insisted that Dr. Okonowsky explain why each one was sexist and harassing. | Okonowsky Decl. ¶ 14. | Disputed. Plaintiff testified that SIA Gonzales "asked [her] what I thought was offensive," he did not "insist[]" that she explain "why each one was sexist and harassing." |
| 45. | During a second meeting a week later, Dr. Okonowsky explained to Gonzales that the page contained posts that made explicit references to FCC Lompoc and that people working at prison were commenting and | Okonowsky Decl. ¶ 15. | Disputed. Plaintiff testified that SIA Gonzales "asked [her] what I thought was offensive," he did not "insist[]" that she explain "why each one was sexist and harassing." |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | that only employees of FCC Lompoc would understand most of the purported humor. | | |
| 46. | Later, Dr. Okonowsky spoke with Defendant's Human Resources Manager, Taulbee McGinnis, who was an active follower of Lt. Hellman's page and told her the memes were "funny." | Okonowsky Decl. ¶ 16 | Disputed.  Plaintiff testified that she did not "recall ever having a conversation with Mr. McGinnis about" the Page.  Pl.'s Dep. Tr. 25:14-25:15. |
| 47. | Throughout February and March 2020, Dr. Okonowsky complained to Dr. Clemmer that many co-workers were "liking" Lt. Hellman's posts and regularly interacting with the page. | Okonowsky Decl. ¶ 17 | Disputed. |
| 48. | Dr. Okonowsky told Dr. Clemmer that she feared retaliation and expressed concern that her complaints were not taken seriously because the investigators (i.e. the acting HR Manager, Union President and SIS staff) were followers of the page themselves. | Okonowsky Decl. ¶ 17 | Disputed. |
| 49. | Lt. Hellman's postings continued to offend Dr. Okonowsky. | Okonowsky Decl. ¶ 18 | Undisputed that Plaintiff was offended. |
| 50. | Many of the posts were critical of her as a female employee. | Okonowsky Decl. ¶ 18 | Disputed. |
| 51. | Dr. Okonowsky feared that since many employees liked and commented on the posts targeting her, her physical workspace could be in danger. | Okonowsky Decl. ¶ 18 | Disputed. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| 52. | She worked in a dangerous Federal Prison and if her co-workers were influenced by Lt. Hellman's disrespect towards her and other females, safety could be compromised. | Okonowsky Decl. ¶ 18 | Disputed. |
| 53. | She wondered: if I'm attacked by an inmate, will Lt. Hellman's crew help me or treat me like the female joke he portrays? | Okonowsky Decl. ¶ 18 | Disputed. |
| 54. | Dr. Okonowsky repeatedly complained that she was offended by the posts and expressed that they affected her at work because she felt ostracized at the brunt of jokes and was constantly worried about which employees had seen her targeted memes. | Okonowsky Decl. ¶ 19 | Disputed. |
| 55. | Because of the harassment and effects on her mental health, her productivity suffered, and she had to work harder to get the same tasks completed. | Okonowsky Decl. ¶ 19 | Disputed.  Plaintiff has not established her work suffered. |
| 56. | Dr. Okonowsky's fears were realized after she heard conversations among co-workers discussing Lt. Hellman's page. | Okonowsky Decl. ¶ 20 | Disputed.  Plaintiff does not identify (1) who participated in such alleged conversations, (2) when such conversations took place, and (3) what specific aspect of the Page was discussed. |
| 57. | She also witnessed co-workers discussing the content of the page during working hours. | Okonowsky Decl. ¶ 20 | Disputed.  The cited evidence is speculative. |

55

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| **58.** | Dr. Okonowsky was confident that any employees who viewed the page would know that she was the subject of the offensive memes. | Okonowsky Decl. ¶ 20 | Disputed.  The cited evidence is speculative. |
| **59.** | On March 7, 2020, Dr. Okonowsky was shocked to see Lt. Hellman posted a meme that was clearly targeting her. | Okonowsky Decl. ¶ 21 | Undisputed that Plaintiff was offended by the meme.  Disputed that the memes were harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| **60.** | Dr. Okonowsky complained of several harassing memes, including:  | Okonowsky Decl. ¶ 25, Ex. 1, at 26. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted this meme was *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. |
| **61.** | The meme shows Dr. Okonowsky's likeness and included comments that were derogatory towards women. | Okonowsky Decl. ¶ 21 | Undisputed that Plaintiff was offended by the meme.  Disputed that the memes were harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | | | *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33 |
| 62. | The meme posted depicted a curvy woman in minimal clothing, coyly posed, and stated, "Feeling cute, might put one on watch later." The caption of the post stated, "If psychology had to cover the morning watch shifts all weekend, nobody'd ever go on [suicide] watch #changemymind." | Okonowsky Decl. ¶¶ 21, 25, Ex. 1, at 26 | Undisputed. |
| 63. | Seventeen people "liked" the post (many of whom work at FCC Lompoc) and two FCC Lompoc employees commented on the post. | | Undisputed that Plaintiff was offended by the meme. Disputed that the memes were harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 64. | On March 7, 2020, Dr. Okonowsky reported to Dr. Clegg and Engelman that the social media posts targeting her on the Lompoc page had continued. | Okonowsky Decl. ¶ 22. | Undisputed that Plaintiff complained to Dr. Clegg and Engelman. Disputed that Plaintiff has demonstrated any social media posts targeted at her. |
| 65. | The following day, Gonzales called Dr. Okonowsky and informed her that he had not yet submitted the referral to the | Okonowsky Decl. ¶ 23. | Disputed. Plaintiff recalled no such interaction during her deposition. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | Office of Inspector General because he "*could not figure out how to print the memes*" and "*had other things going on.*" | | |
| 66. | On March 9, 2020, Dr. Okonowsky expressed her frustration to Dr. Clemmer that the harassment was continuing. | Okonowsky Decl. ¶ 24. | Undisputed that Plaintiff spoke to Dr. Clemmer on March 9, 2020. Disputed that Plaintiff has presented actionable harassment. |
| 67. | Later, Dr. Okonowsky was required to work in the Receiving and Discharge department along with Lt. Hellman. | Okonowsky Decl. ¶ 24. | Disputed. Plaintiff was never "required" to work with the Page's creator. She claimed she had a "neutral conversation" that lasted 3 minutes. Pl.'s Dep. 39:22; 40:17. |
| 68. | She was petrified. | Okonowsky Decl. ¶ 24 | Disputed. Plaintiff never testified that she was "petrified." She claimed she had a "neutral conversation" that lasted 3 minutes. Pl.'s Dep. 39:22; 40:17. |
| 69. | Not only did she feel that her complaints were ignored, but his physical presence caused her to shift focus from helping prisoners with their mental health needs – i.e. her job – to reliving Lt. Hellman's harassment and standing guard in case he decided to further harass or retaliate against her. | Okonowsky Decl. ¶ 24 | Disputed. Defendant promptly investigated Plaintiff's complaints and the alleged harassment ceased. SUF ¶¶ 1, 3, 4, 10, 17, 29, 35-37, 39, 44, 46. |
| 70. | On March 11, 2020, Dr. Okonowsky submitted a 48-page memo to Associate Warden Gutierrez detailing the harassing | Okonowsky Decl. ¶ 25, Ex. 1. | Undisputed that Plaintiff submitted a memo on March 11, 2020. Disputed that the meme was harassing. As Plaintiff admitted all |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | memes that continued to be posted by Lt. Hellman and detailing why each meme was offensive and harassing. | | memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 71. | At this time, the page had over 570 posts and Dr. Okonowsky's 48-pages memo contained over 30 examples of sexist and harassing posts from the page including those that specifically targeted her and other employees at FCC Lompoc. | Okonowsky Decl. ¶ 25, Ex. 1. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, and were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 72. | For example, there was a meme that said, "*When psychology services doesn't get their way and they cry*" and an FCC Lompoc employee posted a comment directly referencing a SHU meeting, which was attended by Dr. Okonowsky and where a correctional officer told her: "*I intentionally don't help you.*" | Okonowsky Decl. ¶ 26. | Undisputed that Plaintiff saw the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 73. | Dr. Okonowsky then saw the meme referencing her job at psychological services, that several FCC Lompoc employees had liked the meme including | Okonowsky Decl. ¶ 26. | Undisputed that Plaintiff saw the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | Grice, and that another FCC Lompoc employee who was also at that meeting left a comment referencing this specific workplace interaction that Dr. Okonowsky was involved in. | | to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 74. | Dr. Okonowsky's complaints were repeatedly dismissed by the Defendant and the memes only continued. | Okonowsky Decl. ¶ 27. | Disputed. |
| 75. | On March 13, 2020, instead of addressing Dr. Okonowsky's complaints of harassment, Dr. Okonowsky was provided a referral to Defendant's Employee Assistance Program, which provides counseling to Defendant's employees to help them address concerns that may negatively impact job performance and overall well-being. | Okonowsky Decl. ¶ 27; Engelman Decl. ¶ 19. | Disputed. Defendant promptly investigated Plaintiff's complaints and the alleged harassment ceased. SUF ¶¶ 1, 3, 4, 10, 17, 29, 35-37, 39, 44, 46. |
| 76. | On March 27, 2020, Dr. Okonowsky submitted a memo to Defendant detailing how Lt. Hellman continued to post offensive and sexist comments, including those clearly targeting her. | Okonowsky Decl. ¶ 28, Ex. 2. | Undisputed that Plaintiff submitted a memorandum on March 27, 2020. Disputed that Plaintiff was subject |
| 77. | For example, one new meme suggested that when female coworkers say, "Call me if you need anything," male staff think, "Do you have anywhere I can put my boner?" | Okonowsky Decl. ¶ 28, Ex. 2. | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | | | workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 78. | Dr. Okonowsky detailed in her memo how Defendant had failed to promptly investigate her complaints and stop the harassing conduct. | Okonowsky Decl. ¶ 28, Exh. 2. | Disputed. Disputed. Defendant promptly investigated Plaintiff's complaints and the alleged harassment ceased. SUF ¶¶ 1, 3, 4, 10, 17, 29, 35-37, 39, 44, 46. |
| 79. | That same day, March 27, 2020, another meme targeting Dr. Okonowsky was posted after Lt. Hellman learned of her complaints and clearly referred to Dr. Okonowsky as a "*giant cunt*" and "relentlessly tells on staff." | Okonowsky Decl. ¶ 29 | Undisputed that Plaintiff complained of the meme. Disputed that the meme was harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. The meme does not name, picture, reference, or otherwise identify her, |
| 80. | Several FCC Lompoc staff members "liked" the post, including Grice, who Dr. Okonowsky previously complained to. | Okonowsky Decl. ¶ 29 | Disputed. Plaintiff has put forth no evidence demonstrating "several FCC Lompoc staff members" |
| 81. | On March 30, 2020, Dr. Okonowsky submitted another memorandum and included the meme that referred to me as a | Okonowsky Decl. ¶ 31, Exh. 3, at 2. | Undisputed that Plaintiff submitted a memorandum on March 30, 2020. Disputed that the meme was directed at Plaintiff. Disputed that |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | "giant cunt."  | | the meme referred to her. The meme does not name, picture, reference, or otherwise identify her, |
| 82. | On March 30, 2020, Dr. Okonowsky submitted another memorandum and included the meme that referred to me as a "giant cunt" and had several employee followers.  | Okonowsky Decl. ¶ 31, Exh. 3, at 3. | Undisputed that Plaintiff submitted a memorandum on March 30, 2020. Disputed that the meme referred to her. The meme does not name, picture, reference, or otherwise identify her, Further disputed that Defendant's employees followed the post as Plaintiff has put forward no evidence demonstrating such individuals were, in fact, employees. |
| 83. | Dr. Okonowsky immediately complained to Engleman. | Okonowsky Decl. ¶ 30. | Undisputed. |
| 84. | However, Engleman did not investigate any of Dr. Okonowsky's complaints and only forwarded them on to Gonzales. | Bowden Decl. ¶ 2, Ex. B, Engleman Depo. 7:8-8:4. | Disputed. Engleman participated in the Threat Assessment Meeting in connection with Defendant's investigation of Plaintiff's complaints. |

62

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| 85. | On April 13, 2020, more than two months after Dr. Okonowsky's initial complaints, a Threat Assessment Team was convened to review Dr. Okonowsky's "concerns about [a] hostile work environment and social media use in violation of policy," as detailed in a memorandum and supporting documentation she submitted to management on March 11, 2020. | Okonowsky Decl. ¶ 32; Engleman Decl. ¶ 17, Ex,. E, at 1 | Undisputed. |
| 86. | Dr. Okonowsky also explained to the investigators, that the harassment bled into the workplace because interactions she was having at work were showing up on the page and people were talking about the page at work. | Okonowsky Decl. ¶ 33. | Disputed.  Plaintiff did not explain to the investigators that "the harassment bled into the workplace," instead she admitted that the entirety of the harassment occurred exclusively online.  Indeed, when asked if the following statement was consistent with her recollection of what she said to the Threat Assessment, specifically "She stated that Hellman has not spoken to her in person, and reiterated as detailed in her memorandum, that his offensive actions towards her and others all occur online," Plaintiff testified "Yeah, and it's consistent with what I've been saying today."  Pl. Dep.'s 134:5-134:12. |
| 87. | During meeting, Dr. Okonowsky was advised to both not look at | Bowden Decl. ¶ 2, Exh. | Disputed.  Plaintiff testified as follows "towards the end of the |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | the page but also to continue to look at the page to report any additional posts. | A, Okonowsky Depo. 60:1-20. | meeting, they also said if it continues to happen, of course let us know." Plaintiff did not testify as erroneously now asserts she was "told by management that she needed to" continue viewing the Page.  Pl.'s Dep. 60:7-8. |
| 88. | Dr. Okonowsky did not consent to continue viewing the page, she was told by management that she needed to. | Bowden Decl. ¶ 2, Exh. A, Okonowsky Depo. 60:1-20. | Disputed.  Plaintiff testified as follows "towards the end of the meeting, they also said if it continues to happen, of course let us know." Plaintiff did not testify as erroneously now asserts she was "told by management that she needed to" continue viewing the Page.  Pl.'s Dep. 60:7-8. |
| 89. | Significantly, on April 16, 2020, the Threat Assessment Team issued a report and determined that Lt. Hellman "*unconvincingly*" denied that the memes were directed at Dr. Okonowsky. | Engleman Decl. ¶ 17, Ex. E, at 2. | Disputed.  The Threat Assessment Memorandum speaks for itself. |
| 90. | Additionally, they determined that "Hellman's actions towards Dr. Okonowsky (i.e., the posting of several memes that reasonably appear to have been directed solely at her) fall within the 'bullying' language/definition" from Defendant's Anti-Harassment Policy. | Engleman Decl. ¶ 17, Ex. E, at 4. | Undisputed. The Threat Assessment Memorandum speaks for itself. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| 91. | The Threat Assessment Team also made several recommendations to Defendant including referring Lt. Hellman to the Office of Internal Affairs for possible policy violations; issuing a cease-and-desist letter from posting on social media any memes/information which violates Agency policy; and a referral to the Employee Assistance Program. | Engleman Decl. ¶ 17, Ex. E, at 4-5. | Undisputed. |
| 92. | Defendant followed the recommendations. On April 16, 2020, Defendant issued Lt. Hellman a Cease-and Desist Order, ordering him to cease and desist posting content on social media in violation of Defendant's policies, including content that could reasonably be deemed as harassing or bullying of another employee and any information which discredits the Bureau of Prisons | Engleman Decl. ¶ 18 | Undisputed, |
| 93. | This Cease-and-Desist Order reminded Lt. Hellman that as a "supervisor" he is held to a higher standard of conduct. | Bowden Decl. ¶ 5, Exh. D | Undisputed. The Cease-and-Desist Order speaks for itself. |
| 94. | On April 16, 2020, Defendant also issued Lt. Hellman a referral to the Employee Assistance Program. | Engleman Decl. ¶ 19 | Undisputed. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| 95. | Even after Lt. Hellman was issued a cease-and-desist letter on April 16, 2020, almost two months after Dr. Okonowsky's initial complaints, Lt. Hellman continued to post sexist and offensive memes including at least one post targeting Psychology Services and one mocking the workplace violence committee process. | Okonowsky Decl. ¶ 34, Exhs. 4-5. | Undisputed that additional memes were posted. Disputed that any of the additional memes were harassing. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 96. | Dr. Okonowsky initially complained about Instagram page on February 18, 2020; however, the page was not taken down until after May 12, 2020. | Okonowsky Decl. ¶ 35. | Undisputed. |
| 97. | On January 24, 2021, because of the harassment she experienced at FCC Lompoc, Dr. Okonowsky transferred to FCC Seagoville, TX. | Okonowsky Decl. ¶ 36 | Undisputed that Plaintiff transferred to FCC Seagoville. Disputed that Plaintiff suffered harassment. As Plaintiff admitted all memes on the Page were *never* sent to her, were *never* displayed in the workplace, were *never* shown to her in the workplace, and were *never* discussed with her without her consent. SUF ¶¶ 6, 14, 21, 23, 25, 26, 33. |
| 98. | On July 6, 2022, Dr. Okonowsky resigned from Defendant and now works as a psychologist for Dallas Fire-Rescue | Okonowsky Decl. ¶ 37 | Undisputed. |
| 99. | Lt. Hellman admits he ultimately took the page down because of | Bowden Decl. ¶ 4, Exh. | Undisputed. |

| Pl.'s SUF No. | Facts | Supporting Evidence | Def.'s Response |
|---|---|---|---|
| | Dr. Okonowsky's complaints and the related investigation. | C, Hellman EEO Decl. at 3-4. | |
| 100. | However, Lt. Hellman also claims that he was never interviewed as part of Defendant's alleged investigation. | Bowden Decl. ¶ 4, Exh. C, Hellman EEO Decl. at 3-4. | Disputed. The Page's creator was interviewed by the Threat Assessment Team. Engleman Decl. ¶ 17, Ex, E. |
| 101. | Defendant also continues to allow its staff to be targeted by misogynistic Instagram posts. | https://www.ktvu.com/news/whistleblower-outsracist-misogynisticinstagram-page-atcalifornia-federal-prison | Disputed. This fact is not supported by the evidence cited by Plaintiff. The linked article dated August 24, 2022 has no nexus whatsoever to Plaintiff's complaints from over two years earlier. |
| 102. | A copycat account from FCC Victorville made the news in 2022. | https://www.ktvu.com/news/whistleblower-outsracist-misogynisticinstagram-page-atcalifornia-federal-prison | Disputed. This fact is not supported by the evidence cited by Plaintiff. The linked article dated August 24, 2022 has no nexus whatsoever to Plaintiff's complaints from over two years earlier. |

Dated: March 20, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

/s/ *Zakariya K. Varshovi*
ZAKARIYA K. VARSHOVI
Assistant United States Attorney

Attorneys for Defendant
Merrick Garland